**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Antoinette JONES, Defendant-Appellant.**

**No. 82–3310**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1982.

John P. Volz, U.S. Atty., Curtis Collier, Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

## I. Introduction

On April 6, 1982, after entering a plea of not guilty, Antoinette Jones was found guilty by a jury on 12 counts of conspiring to defraud the government with respect to income tax refunds, making false, fictitious, and fraudulent claims against the government, and uttering forged United States Treasury checks. With respect to the first two counts, Jones was sentenced to the custody of the Attorney General for 6 months on each count, the sentences to run consecutively, and fined $3,000. As for the remaining counts, imposition of sentence was suspended and the appellant was placed on active probation for 5 years. Because we find that the evidence produced at trial overwhelmingly supports the jury's verdict, we affirm.

## II. Facts

In May, 1981 as a result of a large number of income tax returns from the New Orleans area claiming earned income credit (EIC),[1] all in the same handwriting, all filed under unmarried household status, many showing the same address, and most with no tax, the Internal Revenue Service (IRS), ever-alert, became suspicious and began an investigation.

As a result of the investigation, Antoinette Jones was charged in a 12-count indictment along with John E. Barra. The indictment charged a conspiracy to defraud the government by making false, fictitious, and fraudulent claims against the govern-

Bernard S. Dolbear, New Orleans, La. (Court Appointed), for defendant-appellant.

---

1. Earned income credit with respect to federal income taxes is a vehicle for low income wage earners to receive a credit against their taxes equal to 10% of the first $5,000 in earned income. To qualify, a person must be a head of a household, married, or a surviving spouse; he must have earned income of less than $10,000, and must have a dependent child living with him for the whole year. To the extent that the EIC exceeds tax liability, a refund would be furnished to the taxpayer. 26 U.S.C. § 43.

ment in violation of 18 U.S.C. §§ 2, 286, 287. A superseding indictment additionally charged Jones with uttering forged United States Treasury checks in violation of 18 U.S.C. § 495.

Testimony and exhibits introduced during the 4-day trial established the following facts: In March, 1980 Antoinette Jones asked John Barra (a co-conspirator who pleaded guilty and who testified for the government) to prepare her 1979 income tax returns. She had earned some income that year, but she and Barra inflated the amount to $5,000 by adding fictitious income in order to receive the maximum earned income credit. Later she returned to Barra and had him prepare an income tax return for her 10-year-old daughter, supplying him with false information in order to claim EIC refunds for the daughter and the daughter's fictitious child.

The next year Jones again instructed Barra to prepare similar false and fraudulent income tax returns for her and for her daughter. After receiving refund checks from these returns, she asked Barra if he would be willing to prepare similar fictitious forms for anyone else she might recruit, and Barra agreed. Jones then proceeded to furnish Barra with names, addresses, social security numbers, and the names of dependent children for 34 other returns and EIC claims. In many instances, the appellant would have the refunds mailed to her own address.

Jones received monies from this scheme. At trial, one of the witnesses, Ramona Palmer, testified as follows:

Q: What was discussed at the time you stayed by her house?

A: I asked her did she know who she filled out income tax forms for. She said, 'you want me to give you names?' and she talked about that, and then she said—I asked her why didn't she get a job, and she said, 'well, I get enough money from this. I received two, three checks a week,' you know, and, you know, that was it.

Another witness, Patricia Dawkins, testified that Jones had indicated to her that,

out of the refund that Dawkins would receive, $50 would be subtracted for Barra and $25 for the appellant. Dawkins's refund was sent to Jones's address; it was cashed without her knowledge or approval, and out of the initial refund check of $429, Dawkins received only $310.

The scheme appeared to be proceeding well until Jones approached a friend, witness Ramona Palmer, with a request for the social security numbers of Palmer's children. A few months later, Ms. Palmer testified that she received a tax refund in the mail addressed to her son Albert Christopher. Her suspicions were promptly aroused because her "taxpaying" son was only 3-years-old. Jones later told her "I did that for you . . . . I filled out the form and sent it off because I thought you needed the money." Palmer replied that she was going to take the check to the IRS, and Jones said, "Whatever you do, don't indicate my name." Palmer took the check back to the IRS and agreed to cooperate with their investigation by allowing consensual recordings of her conversations with the appellant. During these conversations, Jones decided that she wanted to retrieve the Albert Christopher check from Palmer. Four of these recordings were introduced into evidence at trial. After retrieving the check, Jones personally cashed it, an action which formed the basis of the "uttering" charge in count 12.

After hearing all of the testimony and reviewing the evidence, the jury found Jones guilty on all charges.

### III. *Issues*

On appeal Jones contends that there was insufficient evidence to support her conviction, that the court erred in failing to suppress the tape recordings of conversations between Jones and Ramona Palmer, and that Jones was entrapped into committing the check uttering offense alleged in count 12 of the indictment.

#### A. Sufficiency Of The Evidence

In reviewing the sufficiency of the evidence to support a defendant's conviction, the jury's verdict must be sustained if

"there is substantial evidence, taking the view most favorable to the government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Chaparro-Almeida,* 679 F.2d 423, 427 (5th Cir.1982). Reviewing the evidence in this light, the testimony and facts adduced at trial readily support appellant's conviction.

Jones filed a return for herself on two occasions which contained false income figures. On two other occasions she filed returns which claimed head of household status for her 10-year-old daughter, which claimed two non-existent children of her minor daughter and which contained false income figures. Jones's co-conspirator John Barra testified as to the appellant's participation in the scheme. Jones furnished Barra with the names, addresses and social security numbers for 34 other returns, many of which were filed on behalf of minor children. She and her co-conspirator agreed upon false income figures and fictitious dependent children to be used in the returns.

The government presented a series of other witnesses who testified that Jones had solicited their social security numbers and the social security numbers of their minor children. Jones had checks mailed to her address or the address of acquaintances. She directed witnesses to tell IRS investigators that they did not know her. Jones cashed or aided in the cashing of several checks. None of the government's testimony was refuted. On the contrary, much of it was admitted by Jones when she took the stand. In sum, the government's evidence was not merely sufficient, but rather, it was overwhelming.

B. Suppression Of Tape Recordings

Prior to trial, Jones filed a motion to suppress the taped recordings of telephone conversations between the appellant and Ramona Palmer made during the period July 19 to July 22, 1981. The motion was denied. Appellant's objections were renewed at trial. The tapes were heard by the district court *in camera* and were admitted.

The recordings in question were made with the consent of Palmer, who was neither an accomplice nor a suspect in the case. After receiving an income tax refund for her 3-year-old son Albert Christopher and discovering that Jones was responsible for it, Palmer returned the check to the IRS and agreed to cooperate in the investigation by allowing a tape recorder to be placed on her telephone to record conversations with the appellant.

Appellant makes two arguments against admission of the tapes. The first, relying on *Massiah v. United States,* 377 U.S. 201, 81 S.Ct. 1199, 12 L.Ed.2d 246 (1964), is that Jones's sixth amendment rights were violated by the admission of the evidence from the tapes. We note, however, that at the time the conversations were taped, no complaint had been filed against the appellant nor had she been either indicted or arrested. Thus, *Massiah's* prohibition against use of self-incriminating evidence gained through the use of a wire tap after a defendant has been indicated is inapposite to the instant case.

■ Secondly, appellant asserts that the first and last of the six tapes were inaudible and thus none of the tapes should have been admitted. Only the four audible tapes were introduced into evidence. Those tapes were clearly audible and were complete. As we have stated before, tapes which contain inaudible portions are nevertheless admissible unless the inaudible portions are "so substantial as to render the recording as a whole untrustworthy." *United States v. Nicoll,* 664 F.2d 1308, 1314 (5th Cir.1982) (citations omitted); *United States v. Greenfield,* 574 F.2d 305, 307 (5th Cir.), *cert. denied,* 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978). Here the two inaudible tapes did not render the remaining recordings untrustworthy.

■ The tapes in question were relevant and established appellant's responsibility for the Albert Christopher check, the subject of the check uttering charge in count 12. The tapes were made with Ramona Palmer's consent, and there was no plausi-

ble evidence to suggest that the information from the tapes was the fruit of illegal wire tapping activity. 18 U.S.C. § 2511(2)(c).[2] The tapes were thus properly admitted.

### C. Entrapment

Appellant finally argues that her participation in the uttering of the Albert Christopher check resulted from "entrapment generated by the telephone calls and the testimony relative to such calls by Ramona Palmer." This argument is unpersuasive.

Count 12 of the indictment charged Jones with uttering the refund check issued to Albert Christopher, Ramona Palmer's 3-year-old son. Palmer returned the check to Jones who subsequently uttered the check at Turner's Tune-Up Service. Jones contends that had Palmer, who was cooperating with the IRS at the time, not returned the check to her, "no fraudulent uttering of such check could have occurred."

 Entrapment occurs when "the criminal design *originates* with the officials of the government and they implant in the mind of an *innocent* person the disposition to commit the alleged offense and induce its commission." *Sorrells v. United States,* 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932) (emphasis added). An examination of the defendant's own conduct and predisposition are required when an entrapment defense is asserted. *Sherman v. United States,* 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958); *United States v. Webster,* 649 F.2d 346, 348–49 (5th Cir.1981) (en banc).

Appellant contends that the facts of the instant case are similar to the facts in both *Sherman* and *Sorrells* in which entrapment was found. We do not agree. In *Sorrells,* a prohibition agent posing as "an ole army buddy" of the defendant asked the defendant for liquor three or four times even after the defendant had stated that "he did not fool with whiskey." 287 U.S. at 439–40, 53 S.Ct. at 211–12. The Court found that, upon the evidence presented, it was error for the district court to hold that there was not entrapment as a matter of law and to refuse to submit the issue to the jury. 287 U.S. at 452, 53 S.Ct. at 216. In *Sherman,* a government informer, believing that the defendant was undergoing a cure for narcotics addiction, repeatedly and ultimately successfully sought to persuade the defendant to obtain for him a source of narcotics. 356 U.S. at 373, 78 S.Ct. at 821. There the Court found that the government had "play[ed] on the weaknesses of an innocent party and beguil[ed] him into committing crimes which he otherwise would not have committed." 356 U.S. at 376, 78 S.Ct. at 822.

Here, however, the appellant's predisposition to commit the offense was overwhelmingly demonstrated by her actions prior to the commission of the offense charged in count 12. All of the other offenses for which she was convicted occurred prior to count 12, among which are three counts involving the utterance of forged income tax refund checks. Furthermore, it was she who sought to retrieve the Albert Christopher check; it was not forced upon her.

 A prosecution cannot be defeated merely because a government agent has provided the accused with the opportunity or facilities for the commission of the crime. *United States v. Tobias,* 662 F.2d 381, 384 (5th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982). Jones had been involved in the income tax refund fraud long before Palmer placed the check in her hands, a fact she had admitted to Palmer. On cross-examination she admitted cashing the check, knowing that she was not entitled to the money. Thus, appellant's entrapment argument is without merit.

---

**2.** 18 U.S.C. § 2511(2)(c) provides that the consent of one of the parties to the conversation renders lawful the interception of a wire or oral communication:

It shall not be unlawful under this chapter for a person acting under color of law to inter-

cept a wire or oral communication where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

The conviction is therefore affirmed for the reasons set forth in this opinion.

AFFIRMED.