RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 03-6016

CLIMMIE JONES, JR.,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 96-00017—Todd J. Campbell, District Judge.

Argued: November 2, 2004

Decided and Filed: March 3, 2005

Before: MOORE, COLE, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** David L. Cooper, LAW OFFICE OF DAVID L. COOPER, Nashville, Tennessee, for Appellant. Paul M. O'Brien, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** David L. Cooper, LAW OFFICE OF DAVID L. COOPER, Nashville, Tennessee, for Appellant. Paul M. O'Brien, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

---

## OPINION

---

R. GUY COLE, JR., Circuit Judge. This is Defendant-Appellant Climmie Jones, Jr.'s second direct appeal from various drug and weapons convictions. Through counsel, Jones contends that the district court erred by: (1) denying a motion to dismiss the indictment because of race-based selective prosecution; (2) denying a motion for a new trial based on newly discovered evidence or failure to disclose exculpatory evidence; and (3) making various sentencing errors, including refusing to order a new sentencing hearing under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. __, 124 S.Ct. 2531 (2004). Acting *pro se,* Jones also presents numerous additional arguments. After the completion of briefing and oral argument, the Supreme Court issued *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005). For the following reasons, we **AFFIRM** the district court in most respects, but **VACATE** and **REMAND** for resentencing consistent with this opinion and *Booker.*

1

## I. BACKGROUND

In 1996, a jury trial was held in which Jones was convicted of: conspiracy to distribute cocaine and cocaine base; distribution and possession of cocaine and cocaine base; distribution and possession of cocaine and cocaine base within 1000 feet of a school; possession of a sawed-off shotgun; and being a felon in possession of a firearm. The district court initially sentenced Jones to 262 months' imprisonment, ten years of supervised release, and a $1050 special assessment. Jones appealed on numerous grounds, including race-based selective prosecution and improper enhancement for obstruction of justice under U.S.S.G. § 3C1.1.

At the first appeal, we reversed the Jones's conviction and sentence. *United States v. Jones*, 159 F.3d 969, 977-78, 983 (6th Cir. 1998). As to race-based selective prosecution, we first noted that Jones must show that the "federal prosecutorial policy had both a discriminatory effect and a discriminatory intent." *Id.* at 976. In our opinion we noted that local law enforcement officers Terry Spence and Kerry Nelson wore t-shirts during Jones's arrest depicting Jones and his wife, Marion Jones, saying "See ya, wouldn't want to be ya." We further noted that, during trial, Spence sent a postcard to Jones, a black man, depicting a black woman with a basket of bananas on her head.[1] Given this conduct, this Court held that:

> Jones has established a *prima facie* case of discriminatory intent. The conduct of [local law enforcement] Officers Spence and Nelson was not only outrageous and unprofessional, but also racially motivated. Although there were three individuals involved in this case . . . only Jones and his wife were African-American. The officers made t-shirts of only those two . . . .
>
> Additionally, Spence's mailing of the postcard evidences racial animus. Even if we were to discount the obvious impropriety of mailing a postcard, any postcard, to a criminal defendant awaiting trial, we could not so easily disregard the nature of the postcard mailed to Jones. The officer sent to an African-American man a postcard of an African-American woman with bananas on her head, and did not choose any other available postcards such as the sunset or the beach.

*Id.* at 977.

Jones then argued that there was discriminatory effect since he was selected for federal prosecution, as opposed to state prosecution, due to his race. We held that Jones had:

> [S]et forth 'some evidence' tending to show the existence of discriminatory effect that warrants discovery . . . . Thus, the district court abused its discretion in denying Jones's request for discovery. We therefore remand the case to the district court to compel discovery on Jones's selective prosecution claim. If Jones is able to obtain evidence that establishes a *prima facie* case of discriminatory effect, Jones may renew his motion to dismiss the indictment.

*Id.* at 978 (internal citation omitted).

---

[1]The text of Spence's postcard to Jones is as follows:

Climmie "Slow Motion." What's up! Haven't talked to you since you were in court and lost all your motions. Sorry, but life goes on. Just wanted to drop you a line and let you know that Cozumel, Mexico is beautiful. I'm on vacation but I'll be back Monday for trial and chances are good your (sic) going to jail for a long time. See Ya. Officer Spence.

During sentencing and under oath, Jones also testified that the officers' t-shirts "contained a racial slur that was written . . . with magic marker." *Id.* at 981. The district court determined that no slurs appeared, and that Jones had perjured himself. Accordingly the district court imposed a two-level sentence enhancement for obstruction of justice. On appeal, we held:

> [W]e do not believe that the perjured testimony regarding Jones's selective prosecution claim was relevant to Jones's sentencing . . . . Based on the record, it appears that the district court was simply giving Jones the opportunity to speak fully and freely before his sentencing . . . . Because Jones's testimony was not material to his sentencing, we find that the district court erred in enhancing Jones's sentence for obstruction of justice. We therefore remand this case to the district court for resentencing.

*Id.* at 981.

After remand, the district court allowed Jones and the government to engage in voluminous discovery regarding local law enforcement practices, and particularly those of the vice unit, in Rutherford County and the City of Murfreesboro. Based on our remand order and the parties' discovery, the City subsequently conducted internal investigations of misconduct in the Murfreesboro Police Department, including, but not limited to, the use of racially offensive language and practices, and improper use or theft of City property and police evidence.

After the close of discovery, Jones renewed his motion to dismiss the indictment on the grounds of selective prosecution, arguing that due to his race, state law enforcement had recommended him for prosecution in federal court, where there are higher penalties for crack cocaine. Jones also moved for a new trial, arguing that the government failed to disclose newly discovered exculpatory evidence impeaching the credibility of testifying officers, under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). Jones then moved for a new sentencing hearing in light of *Apprendi*, since the district court had sentenced him based on a judicial finding of possession of 18.3 grams of crack cocaine, as opposed to the 2.7 grams referenced in the indictment. Jones also moved for a downward departure of his sentence based on the outrageous conduct of law enforcement and evidence of racial animus.

The district court, in a series of orders, denied Jones's motions. With respect to Jones's claims of race-based selective prosecution, the district court found that Jones could not show discriminatory effect because no other Caucasian criminal defendants who had not been recommended for federal prosecution were similarly situated to Jones. On the *Brady* and *Giglio* arguments, the district court held that most of the documents sought by Jones were created after trial; accordingly, they could not have been improperly suppressed under *Brady*. As to the *Apprendi* arguments, the district court held that since Jones's 262-month-sentence was under the statutory maximum of 30 years, there was no Sixth Amendment violation. Regarding the downward departure for outrageous conduct, the district court noted that it had discretion to depart downward for outrageous conduct, but elected not to. The district court further noted that given Jones's propensity for violence, and the overwhelming evidence of significant drug trafficking, any adverse actions against local law enforcement should be instituted as a personnel action. Accordingly, the district court limited the resentencing to recalculating Jones's sentence without the obstruction of justice enhancement reversed by this Court.

The district court then sentenced Jones to 210 months in prison, six years of supervised release, substance abuse treatment, and a $1050 special assessment.

Jones timely appealed.    After the close of briefing and completion of oral argument, the Supreme Court issued *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005), which substantially changed jurisprudence under the Sentencing Guidelines.

## II.  ANALYSIS

### A.        Selective Prosecution

Jones first argues that the district court erred by denying his motion to dismiss the indictment for race-based selective prosecution.

A district court's failure to dismiss an indictment is generally reviewed for an abuse of discretion. *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir. 1990).  However, because the determination of the merits of a selective prosecution claim is essentially a factual inquiry, we will review the district court's determination for clear error. *See Jones*, 159 F.3d at 976.

This Court has previously noted the following two-part test in determining selective prosecution:

> To prevail on a selective prosecution claim, a defendant must show that the federal prosecutorial policy had both a discriminatory effect and a discriminatory intent.  To establish discriminatory intent in a case alleging selective prosecution based on race, a claimant must show that the prosecutorial policy was motivated by racial animus; to establish discriminatory effect, the claimant must demonstrate that similarly situated individuals of a different race were not similarly prosecuted.

*Id.* at 976-77 (internal citations omitted).

Jones cites numerous instances of the use of racially offensive language and practices by the Murfreesboro Police Department vice unit, in an effort to show racial animus and discriminatory effect.  These included, among other things, using the word "nigger" in the presence of African-American arrestees, during investigations and in the work place; allegations that a female police officer was harassed for dating an African-American man; and referring to a Korean-American officer as a "gook," including circulating an offensive cartoon referring to the officer as "Gook Sergeant."  Jones further noted that sixty-five non-African-American criminal defendants charged with crack cocaine violations were not recommended for federal prosecution.  The government did not contest these findings.  Accordingly, Jones argued that both discriminatory intent and effect had been shown.

The district court disagreed.  As for discriminatory intent, the district court concluded that "the appeals court has already determined that discriminatory intent has been established."

With respect to discriminatory effect, the district court first noted that Jones must demonstrate that "law enforcement officials involved in this case failed to refer similarly situated non-African-Americans for federal prosecution."  The district court then noted:

> [The] relevant factors for comparison of this case to others are the Defendant's propensity for violence, as shown by his criminal history (his previous threat to law enforcement personnel), and the involvement of firearms in the crime (a fully-loaded semiautomatic assault rifle and a sawed-off shotgun [were] found in Defendant's home during a search after his arrest), as well as the amount of cocaine base involved (the Defendant was held accountable for over 18 grams of cocaine during the conspiracy, and had over 10 grams of cocaine base on his person when arrested).

The district court observed that of the sixty-five non-African-American crack cocaine defendants not recommended for federal prosecution, only two had guns, and neither appeared to have a propensity for violence similar to Jones's. Accordingly, the district court held that none of the non-African-American defendants were similar to Jones, and held that discriminatory effect had not been found.

On appeal, Jones again repeats his claims, arguing that given the atmosphere of racially offensive conduct by the Murfreesboro Police Department, his prosecution was selective. Citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), Jones further notes "sheer numbers alone can show disparate treatment between races."

Jones's argument is unpersuasive. Concerning the issue of discriminatory intent, neither Jones nor the government argues that the district court erred. Indeed, more than ample evidence supports a finding of discriminatory intent, including that officers: (1) engaged in widespread racially offensive conduct throughout the Murfreesboro Police Department vice unit, both in the treatment of arrestees and in the work place; (2) wore t-shirts emblazoned with Jones's likeness during his arrest; and (3) sent a taunting postcard depicting a black woman with bananas to Jones during trial.

As for discriminatory effect, however, Jones must show that similarly situated non-African-American defendants were not recommended for federal prosecution based on their race. As an initial matter, the district court properly identified the appropriate factors for comparison – propensity for violence, involvement of a firearm, and amount of cocaine base. *See United States v. Daniels*, 142 F. Supp. 2d 140, 144 (D. Mass. 2001) ("Such evidence [of similarity] would include comparison, for example, of the amounts of crack involved in cases with white defendants, their criminal histories, propensity for violence, and any other factors that must justify the higher sentences if they were prosecuted in federal court."). Here, at best, evidence establishes that only two of the sixty-five non-African-American crack cocaine defendants had firearms, and neither of those defendants had a propensity for violence similar to Jones, at least as shown by their criminal history. Also, other evidence indicates that as a general matter, local law enforcement in Rutherford County recommended thirteen Caucasian criminal defendants for federal prosecution, six of whom were charged with drugs and firearms violations.

Nor does *Yick Wo*, upon which Jones relies, support a finding of discriminatory effect. There the Supreme Court noted discrimination was shown where the City and County of San Francisco refused to give laundry operation permits to 200 "Chinese subjects," while 80 non-Chinese were issued such permits. *See Yick Wo*, 118 U.S. at 374. By contrast, evidence in this case supports that both African-American and Caucasian criminal defendants were referred for federal prosecution when charged with drugs and firearms violations.

Jones further argues that the evidence of racial animus supports a showing of discriminatory effect. To be sure, a statement evincing racial animus, if related to the decision to refer for federal prosecution, could be a factor in establishing that the defendant was treated differently on the basis of his race. In this case, however, the evidence only shows that, at best, Spence and others at the Murfreesboro Police Department vice unit routinely made racially offensive comments to arrestees including Jones, and other co-workers. No evidence links such race-based comments to the decision to refer Jones for federal prosecution.

It bears repeating here that the conduct of Spence, Nelson, and others in this case has been repeatedly criticized by the district court, the Assistant U.S. Attorney prosecuting the case, the Murfreesboro City Manager, the Murfreesboro Commissioner of Police, members of the Tennessee print media, and this Court. *See, e.g., Jones*, 159 F.3d at 976 (quoting the district court's extreme displeasure upon discovering that members of the Murfreesboro Police Department had sent a

racially charged postcard to Jones *after* an admonishment by the district court regarding the wearing of offensive t-shirts). Our decision today does not condone the conduct of the aforementioned officers; it merely determines that the district court committed no clear error in finding that Jones did not establish race-based selective prosecution.

## B.     *Brady* **Violations and Newly Discovered Evidence**

Jones next argues that evidence regarding misconduct by members of the Murfreesboro Police Department vice unit was not properly disclosed at trial, resulting in a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), or alternatively, was newly discovered necessitating a new trial. We review the denial of a motion for new trial based on *Brady* violations or newly discovered evidence under an abuse of discretion standard. *See United States v. Ross*, 245 F.3d 577, 584 (6th Cir. 2001); *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986).

After remand from this Court and during the second discovery phase in the trial court, the City conducted internal investigations regarding misconduct within the Murfreesboro Police Department vice unit. These investigations determined that the then-head of the vice unit, Officer Mickey McCullough, as well as Spence, had engaged in widespread misconduct that was not racially motivated. With regard to McCullough, such conduct included, among other things: drinking while on duty; use of seized drug funds for personal use; use of seized property for personal use; giving false statements in an internal investigation; and threatening to destroy departmental documents sought in a civil suit against the City. As to Spence, such misconduct included, among other things: inappropriate handling of seized money and drug evidence; inappropriate use of City property for personal use; lying to a judge; cheating on an employment test; and failure to report numerous professional violations by fellow officers, including the planting of drugs on the property of a criminal suspect, and the operation of police vehicles while intoxicated. The government does not dispute these findings.

When presented with this evidence, the district court refused to grant a motion for a new trial under *Brady*. The district court noted that the vast majority of evidence of non-racially motivated misconduct was discovered after trial. Of the evidence that existed at the time of trial, those documents related only to McCullough, who was not a main witness during trial. Given that the evidence of Jones's guilt was overwhelming,[2] the district court held that a new trial was inappropriate.

A review of the case law and record clearly indicate the district court did not abuse its discretion regarding *Brady*. Under *Brady* and *Giglio* the prosecution is required to disclose exculpatory evidence, including evidence that may impeach the credibility of a witness. *See Giglio*, 405 U.S. at 153-54 (extending *Brady* to nondisclosure of evidence regarding the credibility of material witnesses). However, *Brady* only requires "that the government turn over evidence in its possession to the defense that is both favorable to the accused and material to guilt or punishment." *Hicks v. Collins*, 384 F.3d 204, 220 (6th Cir. 2004); *see also United States v. Bhutani*, 175 F.3d 572, 577 (7th Cir. 1999) (noting that *Brady* material must be: "(1) in the possession of the prosecution; (2) material; and (3) exculpatory"). Here, the district court correctly concluded that the vast majority of the evidence of departmental misconduct was discovered by the City after this case was

---

[2]This Court previously noted that the evidence against Jones included:

> [N]umerous tape recordings of controlled drug transactions in which Jones sold drugs to a confidential informant; drugs were found on Jones when he was arrested; the search of Jones's house revealed the presence of drugs and firearms; and there was testimony regarding Jones's "cooking" of cocaine into cocaine base.

*Jones*, 159 F.3d at 979.

remanded to the district court for discovery relating to selective prosecution. As such evidence did not exist at the time of trial, it was not *Brady* material.

Of those documents that did exist at the time of trial, *Brady* requires exculpatory evidence to be "material," such that there is a "reasonable probability that, had the evidence been disclosed to the defense," the outcome would have been different and "reasonable probability" means a probability "sufficient to undermine confidence in the outcome." *Zuern v. Tate*, 336 F.3d 478, 484 (6th Cir. 2003). Here, evidence impeaching the credibility of McCullough clearly fails this standard. As noted previously, the evidence against Jones at trial was overwhelming. *See Jones*, 159 F.3d at 974, 979 ("We agree with the district court that there was overwhelming evidence that Jones was guilty of the drug offenses."). Given the overwhelming evidence of guilt, a new trial under *Brady* was inappropriate.

Though framing the argument under *Brady*, Jones also argues that newly discovered evidence of misconduct supports a new trial. The district court did not address these arguments, evidently assuming that since almost all of the evidence was not *Brady* material, a new trial was inappropriate.

The district court, however, could have framed Jones's argument as one for a new trial under FED. R. CRIM. P. 33. Under Rule 33, this Court has held the following elements must be established:

> (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal.

*O'Dell*, 805 F.2d at 640. However, even under this standard, Jones's argument cannot prevail. Given the overwhelming evidence of Jones's guilt, any evidence impugning the credibility of various members of the Murfreesboro Police Department would not likely produce an acquittal. Accordingly, we affirm the district court's denial of a motion for a new trial.

## C.    *Apprendi*, *Blakely*, **and** *Booker*

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. __, 124 S.Ct. 2531 (2004), the Supreme Court held that the Sixth Amendment is violated where, under a mandatory sentencing scheme, judicial fact-finding, as opposed to facts found by a jury, increases the sentence beyond the statutory maximum sentence which may be imposed "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 124 S.Ct. at 2537 (emphasis removed). On appeal, Jones notes the district court based his sentence on judicial fact-finding that Jones possessed 18.3 grams of crack cocaine, resulting in a base offense level of 26.[3] U.S.S.G. § 2D1.1(c)(7) (establishing base offense level of 26 for cocaine base in the amount of 5g to 20 g). However, Jones notes that most of the charges in the indictment did not allege an amount of cocaine base, and of those charges that did include an amount, only 2.7 grams were alleged, an amount that would indicate a base offense level of 20. U.S.S.G. § 2D1.1(c)(10) (establishing base

---

[3]Acting *pro se*, Jones also makes additional Sixth Amendment claims, arguing the jury made no factual findings regarding his various sentence enhancements. These include: an enhancement for the amount of cocaine base in his possession; the stolen gun enhancement; the leadership enhancement; the protected area enhancement; and the relevant conduct enhancement, including a finding of possession of marijuana and powdered cocaine. As an initial matter, Jones is incorrect regarding a lack of jury findings as to some of these enhancements. The record establishes that the jury made specific findings regarding the firearms charge and intent to distribute crack cocaine within 1000 feet of a school. To the extent that his arguments challenge the factual findings made by the district judge such as the amount of cocaine base, the possession and amount of other drugs, or the leadership enhancement, this argument is substantially similar to the *Apprendi* argument made by counsel. Accordingly, those arguments will not be separately analyzed.

offense level of 20 for possession of at least 2g but less than 3g of cocaine base). Since the jury made no other findings regarding the amount of drugs possessed, Jones argues that this judicial fact-finding, resulting in an enhanced sentence, violates the Sixth Amendment.

*United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005) resolves this argument in Jones's favor. In *Booker*, the United States Supreme Court extended the Sixth Amendment principle in *Apprendi* to the Sentencing Guidelines. *Booker*, 125 S.Ct. at 756 (Stevens, J., for the Court) ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). Since "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication," *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987), the remedial majority indicated that *Booker* should be extended to all cases pending on direct review. *See Booker*, 125 S.Ct. at 769 (Breyer, J., for the Court). The remedial majority also noted that courts should apply "ordinary prudential doctrines" including the "plain-error test" on appellate review for issues not raised below. *Id.*

However, plain error is not applicable here. Since Jones raised the Sixth Amendment issue during sentencing in the district court, we review that decision *de novo. United States v. Darwich*, 337 F.3d 645, 656 (6th Cir. 2003) (holding that *Apprendi* claims raised in the district court are reviewed *de novo*). In this case, Jones's Sixth Amendment right was violated. The district court's factual finding as to the amount of drugs, resulting in an enhancement of Jones's sentence under the Guidelines, is the textbook example of a Sixth Amendment violation under *Booker. See Booker*, 125 S.Ct. at 746, 769 (affirming the reversal of respondent Booker's sentence, since the district court engaged in judicial fact-finding as to the amount of drugs, resulting in an enhanced sentence under the Guidelines in violation of the Sixth Amendment). Furthermore, in supplemental briefing filed shortly after the issuance of *Booker*, both Jones and the government agree that this case should be remanded for resentencing. Accordingly, we vacate the sentence and remand for resentencing in light of *Booker.*

## D.     Other Sentencing Errors

Finally, Jones claims that the district court erred in calculating his sentence or applying the Sentencing Guidelines. Since *Booker* requires a district court to "consult the Guidelines and take them into account when sentencing," *id.* at 767 (Breyer. J, for the Court), we comment briefly on Jones's claims as a matter of Guideline interpretation. *United States v. Oliver*, — F.3d —, 2005 WL 233779, at *8-*9 (6th Cir. 2005).

Acting through counsel, Jones argues that the district court erred by failing to depart downward outside of the Sentencing Guidelines given the "outrageous conduct" of the Murfreesboro Police Department, including the alleged race-based selective prosecution. Jones notes that this Court previously concluded that the officers' conduct was "outrageous," *Jones*, 159 F.3d at 977, and that the district court failed to consider this properly on a motion for downward departure.

Prior to *Booker*, we could not disturb a district court's denial of a downward departure for "exceptional circumstances" unless the district court was unaware it had discretion to make such a departure. *United States v. Stewart*, 306 F.3d 295, 329 (6th Cir. 2002). Here, the district court clearly noted that it had such discretion, but refused to depart downward.

*Booker* however, makes clear that the Sentencing Guidelines are now advisory, giving the sentencing judge substantially more discretion to sentence above and below the Guideline range. *Booker*, 125 S.Ct. at 767 (Breyer, J., for the Court). Furthermore, the district court's sentence, and its exercise of discretion (if any), must be reviewed by an appellate court for "reasonableness." *Id.* at 766. (Breyer, J., for the Court). Accordingly, on remand, we encourage the sentencing judge to

explicitly state his reasons for applying particular Guidelines, and sentencing within the recommended Guidelines range, or in the alternative, for choosing to sentence outside that range. Such a statement will facilitate appellate review as to whether the sentence was "reasonable." However, we take no position as to the content or extent of such a statement.

Acting *pro se*, Jones also filed briefs making numerous additional sentencing arguments. Many, but not all of these arguments were previously raised and disposed of by the district court. As these arguments have already been analyzed or are without merit, we will only summarily address them here.

Jones first argues that evidence of his prior felony conviction should have been presented to the jury. However, the Supreme Court has previously noted that the fact of a prior felony conviction need not be subject to a determination by the jury. *See Apprendi,* 530 U.S. at 490.

Jones next argues that the district court incorrectly calculated the adjusted offense level by adding certain enhancements to the base offense level for cocaine base. However, a review of the Pre-Sentencing Investigation Report indicates that this argument is without merit.

Jones additionally argues that the district court failed to afford an opportunity for allocution pursuant to the former FED. R. CRIM. P. 32(c)(3)(C), and now as amended, found at FED. R. CRIM. P. 32(i)(4)(A)(ii). However, during his second sentencing, Jones was afforded the opportunity for allocution. Indeed, Jones expressed his deep remorse for the crimes he committed, his successful effort to remain drug free, and his request to be sentenced at the low end of the range. Accordingly, this claim is without merit.

Finally, Jones argues that the inclusion of a simple assault charge in his Pre-Sentencing Investigation Report investigation report was error since certain information regarding the crime was inaccurate. However, Jones himself notes that he pleaded guilty to this crime at trial.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED** in most respects, but we **VACATE** and **REMAND** for resentencing consistent with this opinion and *United States v. Booker, supra.*