*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0282p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

JUAN L. HERIOT,

        *Defendant-Appellant.*

No. 06-3824

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 04-00465—Peter C. Economus, District Judge.

Argued: June 5, 2007

Decided and Filed: July 26, 2007

Before: NORRIS, GILMAN, and SUTTON, Circuit Judges.

---

## COUNSEL

---

**ARGUED:** Jonathan P. Witmer-Rich, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Joseph P. Schmitz, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jonathan P. Witmer-Rich, Edward G. Bryan, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Joseph P. Schmitz, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

---

## OPINION

---

    ALAN E. NORRIS, Circuit Judge. Defendant Juan L. Heriot appeals from his conviction and sentence for trafficking in crack cocaine. Defendant contends that he is entitled to a new trial for two reasons: first, the government failed to disclose critical impeachment information about the latter's primary witness until after trial; second, the district court mishandled the jury's questions about its inability to reach a unanimous verdict on all counts. Defendant also argues that his 360-month sentence of incarceration is unreasonable in light of *United States v. Booker*, 543 U.S. 220 (2005).

**I.**

A superseding indictment charged defendant with five counts of selling crack cocaine in violation of 21 U.S.C. § 841(a).**¹**  Police detective Brian Simmons used a cooperating drug dealer, Antwain Slocum, to make controlled purchases from defendant at 328 West Evergreen Avenue in Youngstown, Ohio.  Slocum allegedly purchased crack from defendant on five occasions. The first purchase occurred on February 10, 2004, the last on April 13, 2004.

Simmons testified that he recruited Slocum in December 2003 after the search of a Youngstown home turned up evidence that Slocum was dealing drugs.  As Simmons put it, "We spoke to him about the potential criminal charges that he could face."  Knowing that he was looking at a possible eight years in prison, Slocum agreed to cooperate and made the drug purchases at issue. The original target was Brian Williams, also known as B-Bop, who had sold Slocum drugs in the past from the West Evergreen location.  The house happened to be the primary residence of defendant's father, Frank Dent.  According to Slocum's testimony, Dent was addicted to crack cocaine and let Williams use his house to sell drugs in exchange for a supply for personal use.

The five controlled purchases had similar characteristics. Simmons would pat down Slocum before he entered the West Evergreen residence and also searched his car.  He outfitted Slocum with a digital audio recording device and kept the residence under surveillance while Slocum went inside. He would then meet Slocum after the purchases and retrieve the drugs.

Trial began on September 7, 2005 on five counts of the indictment (the charge of interference with a United States court employee had been bifurcated).  Slocum was the key government witness and explained the references on the audiotapes to the jury.  Defendant did not present any evidence.

Despite the similar fact patterns of each of the controlled purchases, the jury reached very different verdicts: it acquitted defendant on one count, convicted him on two, and deadlocked on the remaining two counts.

On November 22, 2005, two months after trial, the assistant United States attorney ("AUSA") who had prosecuted the case informed defense counsel by letter that he had been mistaken about the extent of Slocum's own drug dealing.  Although aware that Slocum had dealt drugs in the past, the AUSA had come to discover that Slocum sold drugs to a confidential informant in April 2005, which post-dated the time that he was making controlled purchases in this case.**²**  As the AUSA correctly anticipated, defense counsel filed a motion for a new trial based upon this disclosure.

**II.**

*1.  Failure to Disclose Evidence*

In the letter to defense counsel, the AUSA provided the following details about the activities of witness Slocum:

---

**¹** The indictment also included a sixth count, forcibly interfering with an employee of the United States courts, 18 U.S.C. § 111(a), which is not at issue on appeal.

**²** On direct examination Detective Simmons had been asked about the use of confidential sources.  Among other things, he noted that "they're not allowed to be involved in any illegal activity, obviously, besides when they're working with us."

"[T]he investigating detective [Simmons] . . . revealed to me prior to trial that Mr. Slocum had previously sold crack cocaine to an individual who unbeknownst to Mr. Slocum was working with law enforcement officers. It was my understanding at the time of trial that this transaction took place prior to Mr. Slocum agreeing to serve as a confidential informant . . . and that the transaction pre-dated the transactions that led to Mr. Slocum's cooperation . . . about which he was cross-examined at trial. However, I recently learned and confirmed yesterday that my understanding was in error and that the transaction actually occurred on or about April 2005, a date which post dates this investigation and the period in which Mr. Slocum worked as a confidential informant in this matter. . . .

. . . .

As I also discussed with you today, just prior to trial the investigating agent in this matter learned that a target of a state investigation that was taking place in relative proximity to Mr. Heriot's trial identified Slocum as being involved with providing or "cooking" the crack cocaine found in the possession of this target. . . . After trial, Slocum was interviewed and I was informed that he did admit that he "cooked" crack cocaine for the informant/target but denied any sale to him. . . .

After identifying that I may have be [sic] in error regarding the timing of the transaction identified in the first paragraph of this letter, I had the investigating detective review the files of other investigative agencies/divisions in the Youngstown area to determine if Slocum had been contacted by law enforcement at any other time after he began serving as a confidential informant in this matter. It was based upon that investigation that the above-referenced details were verified. His investigation also disclosed today after our conversation that in January 2005, Mr. Slocum was found in possession of rocks of crack cocaine when he was present during the search of a home in which he was not the target.

The district court denied defendant's motion for a new trial in a Memorandum Opinion and Order, which focused upon the evidence that was introduced at trial impugning Slocum's credibility. Among other things, Slocum conceded that he had been convicted of possession of crack cocaine in 1997 and was present during the drug raid that led to his cooperation in 2003; that his cooperation was an attempt to avoid a potential eight-year sentence related to the 2003 incident; and that defense counsel stressed Slocum's lack of credibility to the jury. After discussing the factual setting, the court provided the following analysis of defendant's claim:

The Defendant advances the present motion pursuant to Rule 33(b)(1) citing the newly-discovered evidence noticed in the Government's November 22, 2005 letter. To warrant a new trial on the basis of newly-discovered evidence, the Defendant generally must establish: "(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." *United States v. Jones*, 399 F.3d 640, 648 (6th Cir. 2005) (citing *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986)). However, the defendant's burden is less rigorous where, as here, the new evidence is exculpatory evidence which the Government failed to turn over in violation of the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963). To warrant a new trial arising from a *Brady* violation, (1) "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the [government], either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler*

*v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (or materiality) is established by showing that "there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289.  "A reasonable probability is one sufficient to undermine confidence in the outcome."  *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991) (internal quotation omitted).  Thus, "the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Strickler*, 527 U.S. at 289-90.

Mem. Op. and Order, Case. No. 4:04 CR 465, May 5, 2006 at 16-17 (citation omitted).  Having set the legal framework, the district court concluded that the government had committed a *Brady* violation.  It then turned to whether there was sufficient prejudice to warrant a new trial.  In the end, the court determined that the suppressed evidence, although further damaging to Slocum's credibility, did not tip the balance in favor of a new trial:

> Having the opportunity to assess the Defendant's motion with first-hand knowledge of the facts and circumstances at trial, this Court finds that there lacks any reasonable probability that the result of the trial would have been different had the Government disclosed the suppressed materials to the Defendant.  It is beyond cavil that the three instances disclosed in the November 22, 2005 letter would have served as additional vehicles for impeaching Slocum's testimony.  However, the Court finds that newly discovered evidence would not have degraded Slocum's testimony to any degree greater than that already achieved through defense counsel's effective cross-examination and closing argument. . . .  Defendant (as well as the Government) emphasized to the jury the importance of having corroboration for Slocum's testimony.  Defense counsel repeatedly referred to the inherently suspect factors for his most recent drug possession offense; namely, Slocum's desire to escape consequences for his most recent drug possession offense.  Defense counsel engaged in a constant assault on Slocum's history of drug trafficking by referring to his prior felony conviction(s), his current relationship with an alleged drug supplier known as B-Bop, and his ongoing efforts to sell drugs from an area located near the residence.  In short, the newly discovered evidence would add only more of the same to the Defendant's arsenal of impeachment material.

*Id.* at 19.

We begin by noting that there is some confusion in this circuit with respect to the appropriate standard of review to apply to the denial of a motion for new trial based on *Brady* violations.  We have applied an abuse of discretion standard in some cases, *see, e.g, United States v. Jones*, 399 F.3d 640, 647 (6th Cir.) (citing cases), *cert. denied*, 126 S.Ct. 148 (2005).  In other instances, we used a *de novo* standard.  *See, e.g., United States v. Corrado*, 227 F.3d 528, 538 (6th Cir. 2000) (citing *United States v. Miller*, 161 F.3d 977, 987 (6th Cir. 1998)).  Recently, we applied both standards to different aspects of the inquiry.  *United States v. Graham*, 484 F.3d 413, 416-17 (6th Cir. 2007) ("This court reviews denial of a motion for new trial based on *Brady* violations under an abuse of discretion standard. However, the district court's determination as to the existence of a *Brady* violation is reviewed *de novo*.") (citing *Jones* and *Miller*).  We need not resolve this ambiguity, however, because we hold that defendant cannot prevail under either standard.

The government concedes that it should have disclosed all of the materials discussed in the November letter from the AUSA to defense counsel.  However, it maintains that the district court's decision was fully supported by the record, which was replete with testimony undermining Slocum's credibility and allowed defense counsel in closing argument to describe Slocum – without objection

– as "an admitted crack cocaine dealer, admitted drug dealer, admitted drug defendant, admitted person who is here to gain something in return for his testimony." Counsel also highlighted that Slocum was a recidivist who continued to sell drugs after receiving favorable dispositions on previous charges. Finally, the district court instructed the jury to assess Slocum's testimony with "more caution" than that of other witnesses.

In reviewing the reasoning of the district court, the opinion in *United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995), is instructive. In that case, members of a Chicago gang were charged with murder and mayhem. Two key witnesses for the government were former gang members who had "seen the light" and were ready to testify against their former comrades. However, the government knew of, and suppressed, evidence that these men continued to commit crimes while cooperating and the district court granted a new trial on that basis. Although the Seventh Circuit affirmed, it stressed that it accorded the trial judge's decision great deference: "[T]he precise question for us is not whether *we* think the combination of perjured testimony and concealing exculpatory evidence is likely to have affected the outcome of the trial but whether we are convinced that Judge Aspen's answer to the question was wrong." *Id.* at 245. In the case before us, of course, the judge reached the conclusion that, based on his observation of the trial, the outcome would not have been affected by the undisclosed evidence – a judgment that *Boyd* instructs us is not to be lightly overturned.

Although it is unfortunate that the government did not disclose Slocum's continued drug trafficking in a timely manner, given the substantial amount of impeachment evidence introduced against Slocum at trial, we are not convinced that a new trial is required. The district court had an opportunity to observe Slocum's testimony and form a sense of his credibility (or lack thereof). It went on to instruct the jury to view that testimony with caution. Given this overall context, the decision of the district court denying defendant a new trial is affirmed.

### 2. *The District Court's Handling of Jury Questions*

As previously mentioned, defendant filed two motions for a new trial. The second motion to be discussed, which was actually filed before the motion for a new trial based upon the undisclosed *Brady* material, challenged the manner in which the district court responded to jury questions concerning unanimity.

During deliberations the jury returned the following question, "If we cannot reach a unanimous verdict on one of the five counts, what is the effect on the overall outcome of the trial?" After discussing possible responses with counsel, the district court indicated to counsel that it was "disinclined to accept partial verdicts." It then gave an instruction drawn in part from this circuit's partial verdict pattern instruction.

After another hour passed, the jury asked, "What do we do with the verdict forms if we are finished deliberating all five counts and unable to reach unanimous agreement on some of the counts?" The district court again discussed the matter with counsel and concluded that the jury should be dismissed for the weekend. At that point, defense counsel queried, "Are we going to seal what they've completed or what they have?" The court replied, "The verdicts for which they have reached – apparently some of the verdicts have been reached, and I'll have the jurors place those verdicts in a separate envelope, seal it . . . and we'll retain custody of the verdicts that have already been reached under seal." The court then told the jury the following:

> What I'm going to do is, my suggestion is that you go home. You've been deliberating for a day and a half, and I think the wise thing to do now is to have you go home this evening, return on Monday, and continue with your deliberations. I'm going to hand you an envelope, I want you to put those verdict forms for which you have reached unanimous verdicts in this envelope, seal it, and when you're done ring

for [the courtroom deputy], hand the envelope to [the courtroom deputy]. We are going to hold it in our vault under seal.

On Monday, the jury resumed deliberations. Shortly thereafter, it sent the following question to the court: "On two counts, we are a hung jury. What do we do at this point?" The court asked for the opinions of counsel. For his part, defense counsel requested an *Allen* charge; the AUSA stated that he had "nothing to add." The district court determined that it would accept partial verdicts for the following reasons:

> [T]his case was relatively short. The evidence was straightforward. The jury deliberated about a day and a half last week. I had received two previous messages indicating that they are having difficulty reaching a verdict on some of the counts, however, they were able to reach verdicts on – we don't know how many, but on a number of counts. I suggested that the jury place those verdicts upon which they were able to reach a unanimous verdict into a sealed envelope. It was placed in the custody of the courtroom deputy, and this morning I recommended that the jury return. And the jury has deliberated approximately an hour an a half this morning. Deliberations began, continued this morning at 9:00 this morning, and at approximately 10:30 the Court received this last message.
>
> This is the third time that the jury has looked for guidance from the Court. On all three occasions, it's obvious that the jury is deadlocked on some counts. How many, we don't know, until this morning where it was indicated that they cannot reach verdicts on two of the five counts.
>
> Now, I don't know, of the other counts, whether the jury was able to unanimously agree on prior – we'll find out when I unseal the verdicts. I'm not aware whether they have been able to reach a verdict in any of the other counts this morning, but in any event, I think I've given the jury enough opportunity to deliberate. It was a straightforward case. The issues were not difficult or complex. The evidence was straightforward. I'm aware that the jury made several requests to listen to the audiotapes which we admitted into evidence, and the jury again this morning requested to listen to some of the audiotapes . . . . And it was following that that the jury sent the message. So I'm going not going to give the jury an *Allen* charge. I'm going to accept the partial verdicts.

When asked, the jury fore-person noted that it had been unable to reach any further verdicts since ceasing deliberations on Friday afternoon.

Federal Rule of Criminal Procedure 31(b)(2) provides, "If the jury cannot agree on all counts as to any defendant, the jury may return a verdict on those counts on which it has agreed." Defendant directs us to a case that gives the following gloss to partial verdicts: "[T]he trial judge treads a fine line in deciding whether to accept a partial verdict: he must neither pressure the jury to reconsider what it had actually decided nor force the jury to turn a tentative decision into a final one." *United States v. Wheeler*, 802 F.2d 778, 781 (8th Cir. 1986) (citing *United States v. DiLapi*, 651 F.2d 140, 146-47 (2d Cir. 1981)).

Given the "delicacy" of the decision, we review for abuse of discretion. *Id.* Although defendant now complains about the district court's handling of the verdicts, not only did he fail to object to the sealing of the verdicts on Friday afternoon, he suggested it. Moreover, on Monday morning he did not request that the sealed verdicts be returned to the jury for further deliberation. In denying the motion for a new trial, the district court cited these considerations:

> Defendant neither requested a partial verdict instruction at any time during the proceedings, nor requested that the jury receive the sealed verdicts upon the re-commencement of deliberations. The Defendant cannot now claim legal error arising from the scenario that he created. Indeed, defense counsel's conduct runs perilously close to an intentionally and impermissible attempt to create error.

Mem. Op. and Order, Nov. 11, 2005 at 15.

We recognize that removal of certain counts from the jury's deliberation without also accepting them as partial verdicts might "force the jury to turn a tentative decision into a final one." *Wheeler*, 802 F.2d at 781; *see also United States v. Benedict*, 95 F.3d 17, 19 (8th Cir. 1996) (admonishing district courts "not to intrude on the jury's deliberative process"). The district court itself recognized that a different approach would have been preferable: "With the benefit of hindsight, instructing the jury regarding the taking of a partial verdict and returning the sealed verdicts to the jury on Monday may have curbed the present proceedings." Mem. Op. at 15. However, simply because alternatives existed does not mean that the district court abused its discretion in following the course of action that it did. Our review of the transcript of jury deliberations gives no indication that the jury itself wished to reconsider the verdicts under seal nor, as mentioned, did defense counsel ask that it be given the opportunity to do so. In fact, the district court polled the jury at the request of defense counsel and its members unanimously affirmed the verdicts. Under the circumstances, we conclude that the district court did not abuse its discretion when it denied defendant's motion for a new trial.

### 3. The Sentence

Defendant contends that his sentence of 360 months of incarceration is unreasonable because the district court failed to properly consider the factors set forth in 18 U.S.C. § 3553(a)(2). In light of *United States v. Booker*, 543 U.S. 220 (2005), this court must affirm the district court's determination if it is reasonable. *United States v. Cage*, 458 F.3d 537, 540 (6th Cir. 2006). "A sentence is unreasonable if the sentencing court failed to consider the applicable Guidelines range or neglects the factors articulated in 18 U.S.C. § 3553(a)." *Id.* (citation omitted). A sentence is presumptively reasonable if it falls within a properly calculated guidelines range. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

In this case, defense counsel indicated that he had no objection to the guideline's calculation employed by the district court. However, as the district court put it at the sentencing hearing, "[a]lthough the defendant does not dispute that he qualifies as a career offender under the guidelines, the defendant contends that the career offender status results in a sentencing disparity in these circumstances and does not serve rehabilitative goals of punishment." Defendant concedes that he has a criminal history of seven drug convictions and that his most recent conviction came while on supervised release from another cocaine conviction for which he served 84 months in prison. The district court reacted to this fact in these terms:

> Mr. Heriot, you have a high potential to recidivate, and the public needs to be protected from you and from others who have committed similar crimes. And there is a need in this case for a substantial sentence that will account for the gravity of your criminal history . . . , deter you and others from committing similar crimes, . . . protect the public, and allow a substantial period of time apart from society for Mr. Heriot to rehabilitate himself.

> Mr. Heriot, take advantage of the vocational and educational training and substance abuse treatment and counseling that will be available to you . . . .

Among the factors contemplated by § 3553(a) are adequate deterrence, protection of the public, and provision of educational or vocational training to defendant.  18 U.S.C. § 3553(a)(2).

While defendant's sentence is admittedly harsh, there is nothing in the record to indicate that we should not accord it the presumption of reasonableness.  To the contrary, the district court looked to both the guidelines and to the statutory factors outlined in § 3553 when imposing its sentence.

## III.

The judgment is **affirmed**.