**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Eugene WHEELER, Freddie Strauder and George Allred, Defendants-Appellants.**

No. 85-4806.

United States Court of Appeals, Fifth Circuit.

Oct. 15, 1986.

As Amended on Denial of Rehearing Nov. 20, 1986.

Mel Davis, Court-appointed, Oxford, Miss., for Wheeler.

Claude H. Powell, Court-appointed, Greenville, Miss., for Freddie Strauder.

Ralph Dean, Court-appointed, Oxford, Miss., for George Allred.

Thomas W. Dawson, Asst. U.S. Atty., Robert O. Whitwell, U.S. Atty., Oxford, Miss., for the U.S.

Before THORNBERRY, JOHNSON, and JERRE S. WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge:

In this criminal case, three defendants accused of running a fraudulent money order scheme from a Mississippi state penitentiary appeal their convictions under 18 U.S.C. §§ 371 and 500. The issues concern: (1) the rendition of a partial verdict; (2) the trial judge's mention, during voir dire, of the fact that the defendants were prison inmates; (3) the denial of severance motions; (4) the sufficiency of the evidence as to two defendants; and (5) the length of the sentences. We affirm as to all the issues.

I. FACTS AND PROCEDURAL HISTORY

Allred, Strauder, and Wheeler participated in a fraudulent money order scheme that had been flourishing in the Mississippi State Penitentiary at Parchman, Mississippi, for several years. It involved guards, inmates, and outside accomplices. In this scheme, the prisoners, who were all in the same camp at Parchman, would establish pen pal relationships with lonely older women by placing or answering advertisements in magazines. In a typical first letter, the inmate would explain that he was in prison for committing manslaughter in an automobile accident but expected to be released soon. He would describe himself as white, with green eyes and above aver-

age height, in his fifties, and possessing a comfortable income from his own businesses and investments. In fact, defendants Strauder and Wheeler are black, much younger, and were in prison for more serious crimes. Defendant Allred is white and in his twenties; he was serving time for armed robbery resulting in the death of the victim. The letters all made romantic appeals.

Once the pen pal relationship was established, an accomplice outside the prison would buy several low-denomination United States Postal money orders, usually for a dollar. The accomplices smuggled the money orders into the prison on visiting day. There, defendant Allred altered the money orders upward to $500, using a razor, a ballpoint pen, and a typewriter. Allred, Wheeler, and Strauder wrote to their correspondents, enclosing money orders and explaining that they had recently come into some money but had no safe place to keep it in prison. They asked the women to deposit the money in their personal accounts for safekeeping. A few weeks later, the prisoners wrote or called their victims to ask that the money be sent to the outside accomplice for a need that had just arisen—for example, attorney's fees. The accomplice then smuggled the cash into Parchman, where it entered the prison economy to buy off guards and pay for drugs and gambling. Postal inspectors estimated that approximately $3,000,000 in raised money orders have circulated through Parchman in this and similar schemes. When the fraudulent nature of the money orders is discovered, the loss is usually borne by the trusting correspondent, who must repay her bank for the difference between the orders' real and altered value.

Defendant George Allred acted as ringleader in this particular scheme. Strauder and Wheeler allowed him to use their names and wrote letters for him; Allred's girlfriend, Jeffie Skelton, and her grown daughter, Anita Skelton Cosby, served as outside accomplices and received suspended sentences, which they do not appeal. At trial, handwriting and fingerprint experts testified that Allred had written letters to victims Dorothy Johnson and Georgiana Williams; Freddie Strauder had written to Christine Adams, Myrtle Moore, and Geneva Wilson; and Eugene Wheeler had written to Dorothy Starnes. Allred, Strauder, and Wheeler were charged with one count of conspiracy and forty-five counts for individual money orders.

Allred originally sought to plead guilty to all forty-six counts on condition that his plea not implicate the other defendants. Since the conspiracy count by definition involved co-conspirators, the trial judge refused to accept the plea. At trial, however, Allred took the stand against his attorney's advice and claimed all the criminal responsibility. He painted his co-defendants as dupes who had acted under his direction without knowing his criminal purpose. Strauder and Wheeler also denied knowledge of the conspiracy. Wheeler put special emphasis on the fact that he had written only some of the letters to Dorothy Starnes. These, he explained, were written as a favor to Allred, who had injured his hand. However, the prosecution was able to point to other letters in Allred's handwriting dated during the period of this supposed hand injury. The jury found Allred guilty on all forty-six counts, Strauder guilty of conspiracy and twenty-nine other counts, and Wheeler guilty of conspiracy and five other counts. The trial court sentenced Allred to seventy-five years, Strauder to twenty, and Wheeler to ten.

## II. PARTIAL VERDICTS

■ After the jury had deliberated for about four hours and had sent several other notes to the court, the jury sent out the following note:

> We can not agree on 23 counts on two of the defendants (21 on 1, 2 on the other) after much discussion. If the vote is not unanimous, is this automatically a "not guilty"?

Rec.Vol. 1 at 110. Upon consulting with all the attorneys and hearing no objection, the judge asked the jury to return to the court-

room and deliver a partial verdict on the charges as to which there was agreement. Then, without objection from any party, the judge decided to declare a mistrial on the remaining counts, rather than sending the jury back to deliberate further.

The Federal Rules of Criminal Procedure and the cases of this Court authorize partial verdicts. Fed.R.Crim.P. 31(b); *United States v. DeLaughter,* 453 F.2d 908 (5th Cir.), *cert. denied,* 406 U.S. 932, 92 S.Ct. 1769, 32 L.Ed.2d 135 (1972). Allred, Strauder, and Wheeler contend, however, that the judge's decision not to send the jury back was premature; that, had the jury deliberated further, it might have reconsidered some of its guilty verdicts. The Second Circuit has pointed out that the trial judge treads a fine line in deciding whether to accept a partial verdict: he must neither pressure the jury to reconsider what it had actually decided nor force the jury to turn a tentative decision into a final one. *United States v. DiLapi,* 651 F.2d 140, 146–47 (2d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427 and 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982). Precisely because the decision is delicate, it is left to the discretion of the trial court. *DeLaughter,* 453 F.2d at 910. In the instant case, the jury note implied that agreement had been reached on most counts. It also stated that agreement was impossible on the remaining counts. The note inquired only into the consequences of that lack of agreement. The trial court clearly did not abuse its discretion in determining that further deliberation would prove fruitless.

■ Moreover, no party objected to the partial verdicts at the time. A decision of the trial court, not objected to below, may be reversed only "to prevent a miscarriage of justice." *Correa-Negron v. United States,* 473 F.2d 684, 685 (5th Cir.), *cert. denied,* 414 U.S. 870, 94 S.Ct. 89, 38 L.Ed.2d 88 (1973). Defense counsel in the instant case may have felt that the jury would have used the extra time to find their clients guilty on additional counts. They must abide by that strategic decision here.

## III. VOIR DIRE

■ During voir dire examination, the trial court asked the jury whether they would be able to give an impartial verdict despite the fact that several defendants had been prison inmates. Defense counsel moved for a mistrial. The judge denied the motion, but instructed the jury that it should not consider any previous crimes committed by the defendants. Allred, Strauder, and Wheeler argue that these references to their prisoner status amount to forcing them to appear before the jury shackled and dressed in prison clothes, requiring reversal. *Tyars v. Finner,* 709 F.2d 1274, 1284 (9th Cir.1983).

The fact that Allred, Strauder, and Wheeler were prisoners at Parchman was mentioned in the indictment and was bound to come up repeatedly throughout the trial. Indeed, the defense stipulated to that fact. The jury was also bound to infer that these three defendants went to prison after conviction for a crime. The judge's mention of the defendants' prisoner status could not emphasize it any more to the jury than the trial itself would emphasize it. Moreover, defense counsel accepted the judge's instructions and failed to renew their objections. Hence, even if their argument had merit, they have not preserved it for appeal.

## IV. SEVERANCE

At several points before and during trial, Strauder, Wheeler, and the two nonappealing defendants moved for severances. Because it is not clear whether these defendants withdrew or reurged their motions and whether Strauder and Wheeler joined in the other defendants' motions, we will assume that severance was adequately presented to the trial court and discuss the issue on the merits.

■ A trial court's decision to deny a motion for severance will be reversed only for abuse of discretion. *United States v. Stotts,* 792 F.2d 1318, 1321 (5th Cir.1986); *United States v. Swanson,* 572 F.2d 523, 528 (5th Cir.), *cert. denied,* 439 U.S. 849, 99

S.Ct. 152, 58 L.Ed.2d 152 (1978). As a general rule, those indicted together should be tried together, especially when conspiracy forms one of the charges. *United States v. Coppola,* 788 F.2d 303, 307 (5th Cir.1986); *United States v. Evans,* 526 F.2d 701, 708 (5th Cir.), *cert. denied,* 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976). However, the Federal Rules of Criminal Procedure grant the trial court discretion to sever defendants or counts. Fed.R. Crim.P. 14. The defendant seeking severance must show "compelling prejudice" that could not be prevented by lesser measures. *United States v. Erwin,* 793 F.2d 656, 665–66 (5th Cir.1986); *United States v. Horton,* 646 F.2d 181, 186 (5th Cir.1981), *cert. denied,* 454 U.S. 970 and 455 U.S. 919, 102 S.Ct. 516 and 102 S.Ct. 1274, 70 L.Ed.2d 388 and 71 L.Ed.2d 459 (1981–82). If the defendant claims that his defense was incompatible with that of his co-defendants, he must prove that the defenses were irreconcilable and that the jury would draw adverse inferences from the conflict itself. *Stotts,* 792 F.2d at 1322; *United States v. Nichols,* 695 F.2d 86, 92–93 (5th Cir.1982). In one case, a defendant took the stand, confessed, and implicated his co-defendants; yet this Court found no "compelling prejudice" because the prosecutor could have called the first defendant to testify even in a severed case. *United States v. Wilson,* 657 F.2d 755, 765–66 (5th Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982).

■ Strauder and Wheeler do not point to any unfair prejudice from being tried with Allred. Indeed, Allred's testimony should have bolstered his co-defendants' cases. He testified that he was the only one who knew of the money order scheme, and that the other defendants acted as his dupes. Clearly, the jury did not believe Allred on this point; in fact, it may have found his story so incredible that it gave less credence to Strauder and Wheeler's own disavowals of knowledge. However, the failure of a trial strategy does not justify reversal. The trial court did not abuse its discretion in refusing to order a severance.

## V. SUFFICIENCY OF THE EVIDENCE

■ In order to obtain a conviction for conspiracy under 18 U.S.C. § 371, the Government must prove: (1) that the defendant knowingly joined a group of two or more people working toward an illegal purpose; and (2) that at least one member of the group committed an overt act in furtherance of the agreement. *United States v. Gordon,* 780 F.2d 1165, 1170 (5th Cir. 1986). *See also United States v. Bland,* 653 F.2d 989, 996 (5th Cir.), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981). While the prosecution must show knowledge of and intent to join the conspiracy beyond a reasonable doubt, *Bland,* 653 F.2d at 996, it need not show that the defendant knew all the details of the conspiracy. *United States v. Parrish,* 736 F.2d 152, 157 (5th Cir.1984). Moreover, the defendant's knowledge and intent can be shown by circumstances. *United States v. Osgood,* 794 F.2d 1087, 1094 (5th Cir.1986); *United States v. Cochran,* 697 F.2d 600, 603 (5th Cir.1983).

■ Strauder and Wheeler contend that the jury heard insufficient evidence to prove that they knew of the conspiracy. This Court must affirm the jury's verdict if it was supported by substantial evidence so that a reasonable trier of fact could have found guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc); *United States v. Jones,* 693 F.2d 343, 345–46 (5th Cir.1982). In this case, Strauder and Wheeler do not dispute that they wrote and signed letters containing obvious lies and instructions about money orders nor that Allred used the letters in his scheme. The postal order scam was widespread and well-known in the Parchman penitentiary. Wheeler testified that he did not ask Allred the purpose of the letters because in the prison world it is dangerous to show curiosity about another prisoner's affairs. However, he never offered any explanation as to why he did not simply refuse to write the letters, especially if prison society is as suspicious as he

painted it. Wheeler's statement that Allred could not write for himself because of a hand injury was directly contradicted by the admission of other letters, handwritten by Allred, from the same period. Evidently, the jury did not believe that Wheeler and Strauder would have written the letters without finding out what they were for and demanding a share of the profits. The jury's finding is supported by substantial evidence.

## VI. SENTENCES

George Allred was sentenced to seventy-five out of the maximum 230 years provided by the statute; Freddie Strauder, to twenty out of a possible 150 years; and Eugene Wheeler, to ten out of a possible thirty years. Allred will be eligible for parole in ten years, and Strauder and Wheeler will be eligible after serving a third of their sentences. 18 U.S.C. § 4205(a). The defendants do not challenge the sentencing procedures, but they do claim that the sentences were disproportionate under the eighth amendment.

The Supreme Court has overturned as disproportionate a life sentence without parole handed down under a recidivist statute to a defendant convicted of passing a bad check. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The Court has, however, approved the consideration, for sentencing purposes, of a defendant's other crimes and of evidence not admissible on guilt. *Williams v. New York,* 337 U.S. 241, 247–50, 69 S.Ct. 1079, 1083–85, 93 L.Ed. 1337 (1949). Factors such as whether the crime was a first offense, whether a defendant was mastermind or follower, and whether a defendant cooperated with the prosecution can justify giving co-defendants widely different sentences. *United States v. Nichols,* 695 F.2d 86, 93–94 (5th Cir.1982). As long as the trial court stays within statutory bounds and respects procedural safeguards, the sentence may be reversed only for "arbitrary or capricious abuse of discretion." *United States v. Cimino,* 659 F.2d 535, 537 (5th Cir.1981).

We find no such abuse of discretion here. Unlike the sentence in *Solem,* the sentences in the instant case provide for parole within a reasonable time. The sentences and sentencing hearing show that the judge gave each defendant individual consideration. Allred received the longest sentence in part because his previous record was more serious (armed robbery in which the victim died); he acted as mastermind in the conspiracy; he showed no repentance; and he apparently attempted to use the trial to gain prestige within the prison. As to all three defendants, the judge stated that he considered the crime particularly grave because it corrupted a branch of the criminal justice system and cynically used especially vulnerable victims. These are legitimate aggravating factors. *Helm,* 463 U.S. at 290–92, 103 S.Ct. at 3010; *Nichols,* 695 F.2d at 94.

## VII. CONCLUSION

The jury heard sufficient evidence to convict Allred, Strauder, and Wheeler of conspiracy and specific offenses. The trial court did not abuse its discretion in the length of the sentences it imposed, nor in denying motions for severance, in mentioning the defendants' prisoner status during voir dire, or in accepting a partial verdict. For these reasons, the judgment of the district court is

AFFIRMED.