In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2905

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NORVELL MOORE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 896-1 — **John F. Grady**, *Judge.*

ARGUED APRIL 3, 2014 — DECIDED AUGUST 19, 2014

Before POSNER, FLAUM, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury convicted Norvell Moore of using or carrying a firearm during and in relation to a crime of violence, *see* 18 U.S.C. § 924(c)(1)(A), but was unable to reach a verdict on the predicate crime of violence itself: taking a motor vehicle by force or intimidation with the intent to cause death or serious bodily harm, *see* 18 U.S.C. § 2119. Because the district court improperly solicited a partial verdict from the

jury before jurors indicated that no further deliberations would be useful, and because we cannot rule out the possibility that this error may have resulted in a premature verdict on the section 924(c) firearm charge, we vacate Moore's conviction on the section 924(c) charge. We leave in place Moore's additional conviction for being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), which was unaffected by the error in soliciting a partial verdict and which Moore does not challenge.

## I.

Moore left his home on the morning of July 14, 2010, armed with a loaded, nine-millimeter Taurus semiautomatic pistol, in search of a car to steal. An acquaintance had offered him $5,000 for a high-end automobile. Moore took public transit to Chicago's northwest side and walked about for an extended period of time—at one point entertaining second thoughts and nearly abandoning the enterprise—until he reached a shopping center at the intersection of Foster and Harlem Avenues, where he spotted Cheryl Heliotis getting into her husband's 2005 BMW. Thinking to himself that "it didn't get any easier than this," R. 162 at 18, Moore decided that he had found his mark.

Moore approached the open driver's side window of the BMW, and, according to Heliotis, pressed his gun to her temple and instructed her to get out of the car. Panicked, Heliotis remained where she was in the front seat, begging Moore not to take the car. Moore repeated several times his demand that Heliotis step out of the car, and (again, according to Heliotis) threatened to shoot and kill her if she did not. Ultimately, when Moore reached into the vehicle and opened the door,

Heliotis bolted from the car and ran, screaming for help, back to the store where she had just been shopping for pet supplies.

Moore sped off in the BMW. Heliotis was able to flag down a police officer, and a radio alert for the stolen car was issued. Other officers in the area soon spotted the car and gave chase. After colliding with two other vehicles, Moore abandoned the car and attempted to escape on foot. He was unsuccessful. Moore was apprehended in a parking lot and taken back to the scene of the carjacking, where Heliotis identified him. On the driver's seat of the abandoned BMW, police found a bag containing Moore's gun, along with photocopies of his birth certificate and Social Security card. They also discovered a shirt that Heliotis had seen Moore wearing when he took the car from her.

After being advised of his rights, Moore agreed to speak with Chicago Police Detective John Broderick and subsequently to Assistant State's Attorney Suzanne Sanders. The latter interview was memorialized in a written statement that Moore signed. Moore disclosed that he had been searching for a foreign, high-end automobile to steal in order to claim the $5,000 his acquaintance had offered him for such a car. He admitted having stolen Heliotis's BMW toward that end, and he admitted that he was armed when he did so. Moore insisted, however, that he never pointed the gun at Heliotis, and he denied that he had any intent to shoot or harm her. According to Moore, when he approached Heliotis, he admonished her not to scream, asked her politely to exit the vehicle, and displayed the gun to her when she did not immediately comply.

A grand jury returned a three-count indictment against Moore. Count One charged Moore with the federal offense of carjacking, *i.e.*, taking a motor vehicle by force or intimidation, with the intent to cause death or serious bodily harm, in violation of section 2119. Count Two charged him with using or carrying a firearm during and in relation to a crime of violence, in this case carjacking, in violation of section 924(c). And Count Three charged Moore with possessing a firearm, having previously been convicted of a felony, in violation of section 922(g)(1). Moore pleaded not guilty to all three charges. After the district court denied Moore's pretrial motions (including a motion to dismiss the indictment as untimely under the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, and a motion to suppress his post-arrest statements), the case was tried to a jury.

The central and only material dispute at trial, as the parties agree, was whether Moore committed the carjacking with an intent to cause death or serious bodily harm to Heliotis if she did not cooperate. *See Holloway v. United States*, 526 U.S. 1, 119 S. Ct. 966 (1999). There was no real dispute that Moore was armed, that he approached Heliotis and showed her his gun, that he instructed her to get out of the car, and that he stole the car when she ran for help. The defense strategy was to cast doubt on Heliotis's testimony that Moore had put a gun to her head and had threatened to shoot and kill her if she did not get out of the car. Moore's written post-arrest statement admitted only that he showed the gun to Heliotis when she initially refused to leave her car and represented that he had repeatedly asked Heliotis to "please get out of the car." R. 162 at 18. During cross-examination, Moore's counsel (mostly without

objection by the government) elicited concessions from the detective and prosecutor who interviewed him that they had found Moore to be cooperative, credible, and non-evasive; that he appeared sincere as to certain specific aspects of his account; and that the prosecutor had made no written note of any apparent effort on Moore's part to minimize his conduct. The defense also highlighted certain inconsistencies in the accounts of the incident that Heliotis had given over time, as well as the fact that Heliotis had been able to flee with her purse despite Moore's instruction that she leave it in the car.

In its final instructions, the court advised the jury with respect to the carjacking charge set forth in Count One of the indictment, that "[i]ntent to cause death or serious bodily harm includes an intent to cause the victim death or serious bodily harm if he or she does not comply with the defendant's demand." R. 163 at 41; R. 92 at 9 (Government's Proposed Instruction No. 8). The court had rejected an alternative instruction proposed by the defense, which conveyed the same substantive point about intent using different language: "In other words, 'the government [must] prove beyond a reasonable that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete taking of the car.'" R. 94 at 2 (Defendant's Proposed Instruction No. 2) (quoting *Holloway*, 526 U.S. at 12, 119 S. Ct. at 972).

The jury began its deliberations shortly after 11:00 a.m. on the third day of trial, immediately after counsel made their closing arguments and the court gave the jury its final instructions. At around 6:00 p.m., after seven hours of deliberations, the court summoned the jury into the courtroom to inquire

whether jurors preferred to keep deliberating or break for the evening and return the following morning. The foreperson advised the court that the jury preferred to continue its deliberations. At 8:22 p.m., the judge received a note indicating that the jury now wished to cease its deliberations for the day and return late the following morning. Signed by the jury foreman, the note read in full:

> We would like to end for the day. Everyone is tired and we are not making progress.

> If possible we would like to begin deliberations [at] 11:30 a.m. Friday. Some people will not get home tonight until after midnight.

R. 107; R. 167 at 56.

The district judge advised the parties that he intended to ask the jury whether it had reached unanimous agreement as to any count of the indictment; if it had, the judge planned to take a partial verdict on that counts. The judge indicated that he would also inquire whether, as to any counts on which the jury remained undecided, whether further deliberations would be useful. Both parties expressed concern about the judge's declared course of action. The government's counsel objected to the court's plan altogether, noting that the jury had indicated its wish to continue deliberations on the following day and arguing that the jury should be permitted to do so without interruption. Defense counsel was more concerned with the court's intention to ask jurors whether further deliberations would be useful as to any count that remained unresolved; he was worried that polling the jury on that subject might inappropriately reveal the degree of division among the jurors

and put pressure on any dissidents. Beyond that concern, he agreed with the court's stated intentions. After hearing counsel out, the district judge remained committed to his plan to assess the status of jury deliberations and take a partial verdict on any count as to which the jury had reached agreement. "Well, I am going to proceed as I suggest over the objections of those of you who made an objection." R. 167 at 58. The jury was summoned into the courtroom for that purpose.

In response to the court's inquiry, the jury foreperson indicated that jurors had reached agreement as to some counts of the indictment. The court advised the jury that it should complete the verdict form as to the counts upon which it had reached unanimous agreement. The court also inquired of the jurors whether they believed that further deliberations would be useful on any count or counts as to which they remained divided. It received a mixed response to that question. The foreperson viewed the prospect of reaching unanimity as unlikely: "My best judgment is no." R. 167 at 59. But when the court asked whether anyone else on the jury disagreed with that assessment, another juror raised his hand and said that he "wouldn't exclude the possibility altogether" of reaching a unanimous verdict. R. 167 at 60. In view of the latter response, the court indicated that deliberations on the outstanding count or counts would be allowed to continue. The court instructed the jury to return to the jury room and fill out the verdict form as to any counts on which it had agreed. Before the jury retired for that purpose, the foreperson posed a question to the court:

THE FOREPERSON:   Question?

| | |
|---|---|
| THE COURT: | Yes. |
| THE FOREPERSON: | One of the counts was multi-faceted. There was four elements to Count One. In the event that we reached unanimity on one, two or even three of those, should we indicate that or does — |
| THE COURT: | No. |
| THE FOREPERSON: | — just don't indicate that anyway. |
| THE COURT: | You have to reach unanimous verdict on all elements of a count. |
| THE FOREPERSON: | Okay. |
| THE COURT: | Three out of four is no good. |
| THE FOREPERSON: | Okay. |
| THE COURT: | Okay? |
| | All right. Go ahead and return to the jury room. |

R. 167 at 60–61.

The jury shortly thereafter returned a verdict form indicating that it had reached unanimous verdicts of guilt on Counts Two and Three of the indictment, but had not arrived at a verdict on Count One. Because a finding that Moore had committed the carjacking offense charged in Count One was an

element of the weapons offense charged in Count Two, it was immediately apparent to the court and to the parties that there was a potential problem with the jury's decision to convict Moore on Count Two when it had not yet reached a verdict on Count One. The following discussion ensued between the court and counsel (Mr. Mitchell for the defense and Mr. Jonas for the prosecution):

> THE COURT: It strikes me that the guilty verdict on Count Two is premature. What do counsel think about that?
>
> MR. MITCHELL: Judge, the instruction on Count Two did not define the elements of federal carjacking as part of Count Two, it just simply said carjacking as in Count One. So for them to think that all they have to find is that he actually stole the car as a carjacking without the four elements it makes it possible to have a Count Two guilty verdict without a Count One.
>
> So it is unclear from my understanding that they had to also find all four elements in Count Two for the carjacking as they did in Count One. And I think because those four elements

were not mentioned as part of Count Two, they didn't think it applied.

THE COURT:     Well, there was no objection to the clarity of the instruction, and it didn't occur to me that there was any lack of clarity. My own view is that one of the elements of Count Two is a finding of guilty on Count One.

Mr. Jonas, what do you think?

MR. JONAS:     Judge, I think we'd like to research it, frankly. I mean, our understanding is you can have inconsistent verdicts that don't require or — that are not reversible.

THE COURT:     Oh, I'm not talking about reversible or —

MR. JONAS:     Understood.

THE COURT:     What I am thinking about is sending the jury back for further deliberations on Count Two. And I think your idea of research is a good one.

Let's find out about this, and be
ready at 11:30 tomorrow morn-
ing to decide what to do.

MR. MITCHELL:     But again, Judge, I think for
clarification, and again if you
look at the instruction you
gave for Count Two, it says a
guilty finding of carjacking as
alleged — that he actually did
the carjacking as alleged in
Count One, but it doesn't say
that those four elements are the
same.

And so if they are hung on
Count One, they should have
also been hung on Count Two.
It makes no sense.

THE COURT:        Well, I think I agree with you.

MR. MITCHELL:     Okay. So I was just asking if
you want to clarify or [give] a
clarifying instruction to make
sure that they understand that
that was the basis for which
they would have had to find
Count Two.

THE COURT:        That's what I am thinking I
should do.

MR. MITCHELL:     Yes, Judge.

R. 167 at 62–64. Defense counsel urged the court to give the jury a clarifying instruction on the interrelationship between Counts One and Two that evening, before the jury was released for the day, but the court demurred, indicating that it wished to research and contemplate the situation before taking action. The jury was therefore released for the evening without further instruction.

On the following morning, the court announced to the parties that, after further consideration and research, it had tentatively concluded that no further deliberations and no supplemental instructions were warranted with respect to Count Two. The court observed that the evidence was sufficient to support the guilty verdict on that count, and any inconsistency between the jury's ongoing inability to reach a verdict as to Count One and its finding of guilt on Count Two did not call into question the validity of the verdict on the latter count.

Initially, neither party agreed with the court's announced intent to accept the verdict on Count Two. The government agreed with the court, in principle, that any inconsistency between the jury's guilty verdict on Count Two and its indecision as to Count One did not necessarily call into question the validity of the verdict on Count Two, nor did it suggest that the jury must have misunderstood the court's instructions on Counts One and Two. Nonetheless:

> Having said that, what we propose, because of …
> the taking of the partial verdict, which is not usual,
> I guess, to make everything clean, and so we don't
> have to try this case again, we propose sending the

> jury back to deliberate all over again on all three
> counts, and just say, you know, putting aside last
> night, we want you to deliberate on Counts One
> through Three, and then when you're done, return
> a verdict without any further instruction.

R. 168 at 5–6. The court rejected outright the idea of sending both Counts Two and Three back to the jury for deliberation, although it remained open to the possibility of ordering further deliberations on Count Two. With its proposal to have the jury continue deliberations on all three counts rejected, counsel for the government, recognizing that the reasons for the jury's partial verdict could not be known, now conceded that "we just have to accept and live with the jury's verdict." R. 168 at 9.

For his part, defense counsel again argued that the jury's decision to convict Moore on Count Two, without having agreed that he had committed the predicate crime of violence in Count One, presented the possibility that jurors had misunderstood the court's instructions on these counts. That was why, defense counsel explained, he believed the court should have given the jury a clarifying instruction the night before, and why he believed that the court should deliver such an instruction before the jury's deliberations on Count One resumed. Defense counsel also felt himself compelled at this juncture to move for a mistrial based on how the court's inquiry into the status of the jury deliberations had unfolded the prior evening.

> [M]y concern, and as I mentioned to my client, is
> that I think because of the way it transpired, I have
> to move for a mistrial because in this case the fore-

man in open court, prior to any verdict being announced on any of the counts, indicated that they were hung.

I think by having them do a piecemeal verdict, the Court pierced totally unintentionally into the deliberation process to see where they were, whether we thought it was just on Count Two and Three, not just Two, but I think it was inappropriate, Judge. And then to ask the jurors to determine, after the foreman said that they were hung or could not reach, and one person to raise their hand, again it began to show where the deliberations were. And I think that that, Judge, was improper, especially now given what we know about what the deliberations and the problems that they are having, given the verdict forms that they signed.

R. 168 at 8.

Having heard the parties out, the district court denied Moore's motion for a mistrial, declared its intent to accept the partial verdict on Counts Two and Three, and allowed the jury to resume deliberations on Count One without any supplemental instruction.

After several hours of additional deliberations, the jury foreman advised the court by way of a note that the jury was divided 11 to 1 in favor of conviction on Count One and would be unable to arrive at a unanimous verdict. The court summoned the jury into the courtroom and inquired whether there was any disagreement with the notion that further deliberations were unlikely to result in a unanimous verdict. No juror

spoke up. At that point, the court supplied the jury with a new, clean verdict form that asked for its verdict on all three counts of the indictment and had the jury complete it. The jury returned verdicts of guilt on Counts Two and Three, but wrote "impasse" as to Count One. R. 110. After polling the jury to confirm the unanimity of its verdicts on Counts One and Two, the court formally entered findings of guilt on the latter two counts, declared a mistrial on Count One, and, on the government's motion, dismissed Count One without prejudice.

Moore subsequently filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, emphasizing the inconsistency between the verdict of guilt on Count Two and the lack of a verdict on the predicate charge in Count One. The court denied the motion.

At sentencing, the court ordered Moore to serve consecutive terms of 120 months on each of Counts Two and Three, for a total sentence of 240 months, a term substantially below the lower limit of the 360 months- to-life range advised by the Sentencing Guidelines.

## II.

Moore pursues three issues on appeal: (1) whether, in light of the jury's inability to reach a verdict on the carjacking charge, the evidence is sufficient to support the jury's guilty verdict on Count Two, given that the commission of a crime of violence—here, carjacking—is an essential element of the section 924(c) charge; (2) whether the district court abused its discretion in refusing Moore's proposed jury instruction regarding the intent element of the carjacking offense; and (3)

whether the district court abused its discretion in denying
Moore's motion for a new trial.

Our focus will be on the third of these issues: the denial of
the Rule 33 request for a new trial on Counts One and Two of
the indictment. Whether the interest of justice warrants a new
trial is a discretionary decision that we review with an appro-
priate degree of deference. *See*, *e.g.*, *United States v. Berg*, 714
F.3d 490, 501 (7th Cir. 2013). Here, because we find that the
court erred in inviting a partial verdict before the jury indi-
cated that further deliberations would be fruitless as to any
unresolved counts, we vacate the verdict on Count Two and
remand for a new trial.

The close relationship between Counts One and Two sets
the backdrop for our analysis. In order for a defendant to be
guilty of using or carrying a firearm during and in relation to
a crime of violence as proscribed by section 924(c), he must
have committed all of the acts necessary to be subject to
punishment for the crime of violence. *United States v.
Rodriguez-Moreno*, 526 U.S. 275, 280, 119 S. Ct. 1239, 1243 (1999);
*see also*, *e.g.*, *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir.
2003). Thus, in order for the jury to convict Moore on the
section 924(c) charge in Count Two, it was required to find that
all four elements of the predicate crime of violence
—carjacking—had been established beyond a reasonable
doubt. Three of those four elements were all but conceded, but
the defense did challenge the notion that Moore, in taking the
car from Heliotis, had the intent to kill her or do her serious
harm. Indeed, that element was the principal focus of the
defense case. And the jury foreman's question of the
judge—whether the jury should indicate if it agreed to some

but not all elements of Count One—suggests that the defense may have raised doubt in the minds of at least one juror on that element. If, as the foreman's inquiry suggests, the jurors were divided as to that element (or any other) of Count One, then logically the jury was undecided not only as to Count One but as to Count Two, which required the jury's unanimous finding that all four elements of Count One had been proven beyond a reasonable doubt.

In this regard, we are not so concerned with the fact that the jury instruction as to Count Two did not repeat the individual elements of the Count One carjacking offense,[1] as we are with the evident possibility that the jury, for whatever reason, overlooked the fact that its inability to render a verdict as to Count One indicated that it was not prepared to render a (partial) verdict on Count Two either. The district court itself recognized the problem when it described the jury's verdict on Count Two as "premature." R. 168 at 62. And, in particular, we are concerned with the possibility that the court's decision to solicit a partial verdict contributed to the problem.

But before we proceed further, we must address the government's contention that Moore waived any objection to

---

[1] The court gave the Seventh Circuit pattern instruction for a section 924(c)(1)(A) offense, which required the jury to find beyond a reasonable doubt that Moore had committed the carjacking offense as charged in Count One. R. 163 at 41–42; *see* SEVENTH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS (2012 ed. as revised Feb. 2013) at 235. Most if not all circuits frame their pattern instructions similarly. *See* 2A Kevin F. O'Malley, Jay E. Grenig, & William C. Lee, FED. JURY PRAC. & INSTR. § 39:18 (5th ed. updated through Aug. 2014) (setting forth model instruction as to section 924(c)(1)(A) offense and collecting pattern instructions from various circuits).

the district court's decision to ask the jury for a partial verdict, which is based on Moore's acquiescence to the court's declared intent to ask the jury about the status of its deliberations and to ask for a verdict on any count or counts that it had thus far resolved. Gov. Br. 27 n.2. Although Moore's counsel did raise a concern about the court's plan, it was focused on the prospect of exposing any division among the jurors while deliberations were ongoing; there was no objection to asking the jury whether it had reached agreement on any count and, if so, to render a verdict on that count. By contrast, the government's counsel did object, unequivocally, to this aspect of the court's proposed course of action, indicating its preference that deliberations be allowed to continue undisturbed; to that extent, the court was given an opportunity to reconsider before it asked the jury to return a partial verdict. Moreover, once the partial verdict had been returned, *both* the defense and the prosecution urged the court to have the jury resume deliberations on Count Two, and Moore's counsel unequivocally, if belatedly, voiced concern about the court's intrusion into the jury's deliberative process. At that juncture, the court had the opportunity to have the jury resume deliberations on Count Two (if not Count Three, as the government also suggested)—with or without a supplemental instruction reminding the jury of the relationship between Counts One and Two, as Moore requested—rather than accepting the verdict on Count Two as final. The court chose the latter course. Under these circumstances, we believe that Moore preserved his right to challenge the partial verdict on appeal, and we move on to the merits of the argument.

We may assume that had the jury, in its own time, exhausted its ability to reach a verdict on all counts, and announced that it was deadlocked on Count One but unanimous as to Counts Two and Three, its verdict as to Count Two would be sustained, just as it almost certainly would have been sustained had the jury decided to acquit Moore on Count One but convict him on Count Two. Either of those scenarios would present the same inconsistency with which we are confronted here, given the relationship between the two counts. Nonetheless, as the cases recognize, such an inconsistent verdict could be chalked up to jury mistake, compromise, or lenity; and typically the guilty verdict will stand (so long as the evidence is sufficient to support it) notwithstanding an inconsistent verdict on a related offense, even if conviction on the latter offense is a predicate to conviction on the former. *United States v. Powell*, 469 U.S. 57, 65, 105 S. Ct. 471, 476–77(1984); *Dunn v. United States*, 284 U.S. 390, 393–94, 52 S. Ct. 189, 190–91 (1932); *United States v. Askew*, 403 F.3d 496, 501 (7th Cir. 2005). This is how the government views the state of affairs here, and how the district court ultimately viewed matters when it decided to accept the verdict on Count Two rather than giving the jury a supplemental instruction and/or asking the jury to continue its deliberations on Count Two. But this case does not conform with the more typical scenario.

What happened here, and what is the source of our concern, is that the court invited a partial verdict while deliberations remained ongoing and before the jury indicated that it was truly deadlocked as to any count. Recall that when the jury first asked to be released for the evening because the hour was growing late, "[e]veryone is tired[,] and we are not

making progress," R. 107; R. 167, the jury did not declare that it was at an impasse as to any charge; on the contrary, it is clear from the jury's note that it wished to resume its deliberations late the following morning. As long as all counts of the indictment remained on the deliberating table, the jury might have realized that its disagreement as to Count One logically foreclosed a verdict on Count Two. However, once it was asked by the court whether it had reached agreement as to any count, and its verdict as to Counts Two and Three were solicited and accepted by the court, the jury lacked the ability to revisit Count Two. We acknowledge, of course, that when the foreman was questioned by the court, he indicated that the jury had reached agreement as to certain counts, and the jurors confirmed their unanimity when they completed the verdict form and rendered verdicts as to Counts Two and Three. Again, however, we cannot be sure either that the jury appreciated the inconsistency at the time it rendered a verdict on Count Two, or that the jury might not have realized the inconsistency and acted differently had a partial verdict not been invited by the court.

Of course, Federal Rule of Criminal Procedure 31(b)(2) expressly authorizes a jury in a single-defendant case to return a partial verdict on any counts as to which it has agreed. Whether and when to advise the jury that it may return a partial verdict as the rule permits, and at what point during deliberations it is appropriate for the court to accept a partial verdict, are necessarily discretionary and fact-dependent decisions. *See United States v. Durham*, 645 F.3d 883, 893–94 (7th Cir. 2011) (responding to jury inquiries); *United States v. Degraffenried*, 339 F.3d 576, 580–81 (7th Cir. 2003) (responding

to jury note declaring impasse); *United States v. Heriot*, 496 F.3d 601, 608 (6th Cir. 2007) (accepting partial verdict); *United States v. Patterson*, 472 F.3d 767, 780–81 (10th Cir. 2006) (instructing jury on option of returning partial verdict), *cert. granted, j. vacated, and remanded on other grounds*, 555 U.S. 1131, 129 S. Ct. 989 (2009); *United States v. Benedict*, 95 F.3d 17, 19 (8th Cir. 1996) (accepting partial verdict).

When a jury indicates that it has reached a verdict as to some counts of an indictment (or defendants, in a multiple-defendant case), but has deadlocked as to others, a responsive instruction that, in a neutral fashion, lays out the options available to the jury—including the option of returning a partial verdict, if it so chooses—is appropriate. *See United States v. DiLapi*, 651 F.2d 140, 146 (2d Cir. 1981); *see also Patterson*, 472 F.3d at 780; *United States v. LaVallee*, 439 F.3d 670, 691 (10th Cir. 2006); *United States v. Black*, 843 F.2d 1456, 1463 (D.C. Cir. 1988); *see also United States v. D'Antonio*, 801 F.2d 979, 983 (7th Cir. 1986) (emphasizing importance of content-neutrality in judge's response to jury's first indication of possible deadlock) (citing *United States v. Thibodeaux*, 758 F.2d 199, 203 (7th Cir. 1985) (per curiam)). A judge is not required to inform the jury in every case that it may return a partial verdict, nor does he become obliged to do so at the first sign of disagreement among the jurors. *See United States v. Dakins*, 872 F.2d 1061, 1064 (D.C. Cir. 1989). But when deliberations have grown long relative to the length of the trial and the number and complexity of the charges, and the judge is advised and convinced that there is a genuine impasse among the jurors as to one or more charges, certainly it is within his discretion to advise the jury that a partial verdict is among its options. *E.g., DiLapi*, 651 F.2d at

146–47; *cf. United States v. Vaiseta*, 333 F.3d 815, 818–19 (7th Cir. 2003) (district court did not abuse its discretion in taking partial verdict on six of seven counts after confirming that jury was genuinely deadlocked on remaining count).

This is, however, delicate ground on which the judge must tread very carefully. *See Heriot*, 496 F.3d at 608; *United States v. Wheeler*, 802 F.2d 778, 781 (5th Cir. 1986). A premature inquiry into whether the jury has reached a verdict as to at least some charges, or an unprompted, mid-deliberations instruction informing the jury that it has the option to return a partial verdict, may impermissibly intrude upon the jury's deliberative process. *See Benedict*, 95 F.3d at 19; *DiLapi*, 651 F.2d at 146–47. The jury should be permitted to structure its deliberations as it wishes; and whether to return a partial verdict, and if so at what point during its deliberations, are questions that in the first instance are for the jury itself to answer. *Patterson*, 472 F.3d at 780–81; *DiLapi*, 651 F.2d at 146. Absent the jury's declaration that it is deadlocked as to one or more charges, asking the jury whether it has reached agreement as to any charge or giving the jury a supplemental instruction that it can return a partial verdict, might be construed by the jury as a hint from the court that it is taking too long to render a verdict. *See Patterson*, 472 F.3d at 780–81. And where, as here, the jury indicates (whether on its own initiative or in response to the court's inquiry) that it has reached agreement as to some but not all charges, an invitation to deliver a partial verdict poses the risk that the jury will "premature[ly] conver[t] … a tentative jury vote into an irrevocable one." *Benedict*, 95 F.3d at 19; *see also Heriot*, 496 F.3d at 608; *DiLapi*, 651 F.2d at 147; *Wheeler*, 802 F.2d at 781. Jurors may not realize that in delivering a

partial verdict, they are foreclosing to themselves any further consideration of the charges included in that verdict. Locking in a partial verdict may thus deprive the jury of "the opportunity to gain new insights concerning the evidence" as it bears on a count or a defendant as to which a partial verdict has been rendered, *DiLapi*, 651 F.2d at 147, and "deprive the defendant of 'the very real benefit of reconsideration and change of mind or heart,'" *Benedict*, 95 F.3d at 19 (quoting *United States v. Taylor*, 507 F.2d 166, 168 (5th Cir. 1975)). Prematurely bringing jury deliberations to an end as to some counts while deliberations on others continue is "particularly troubling" when one of the outstanding counts is closely related to a count on which the jury is asked to render a partial verdict. *Benedict*, 95 F.3d at 20.

We have said that it is "probably inadvisable" for a court, on its own initiative and without any indication that the jury is deadlocked as to one or more counts, to inform the jury that it may render a partial verdict. *United States v. Peak*, 856 F.2d 825, 828 (7th Cir. 1988). This case illustrates why that is so. The partial verdict solicited by the court included a guilty finding on the section 924(c) charge while the jury was still deliberating the predicate offense of carjacking. Because the jury's partial verdict was solicited before the jury had indicated that there would be no point to further deliberations—and, indeed, deliberations on Count One would continue for several more hours before a deadlock was finally declared—we have no way of knowing whether the jury would have remained unanimous as to Moore's guilt on Count Two had that count not been removed from deliberations by the court's solicitation of a partial verdict. We could, as the government urges us to do,

resort to stock presumptions—that the jury understood and followed the instructions as to the elements of Counts One and Two, and opted to convict on the firearm charge but not the predicate crime of violence out of lenity or compromise, for example—to paper over the inconsistency and sustain the verdict on Count Two. *See Powell*, 469 U.S. at 66–67, 68–69, 105 S. Ct. at 477–78, 478–49. But it is one thing to rely on such presumptions when jury deliberations have been allowed to run their full course without interruption, and another when it is the court's intrusion into that process to solicit a partial verdict that may be responsible for the inconsistency. The court's decision to ask for a partial verdict, when the jury had not yet finished its deliberations as to the undecided count nor indicated that it was deadlocked, needlessly injected uncertainty into the verdict on Count Two.

In *Benedict*, 95 F.3d 17, our colleagues in the Eighth Circuit, voicing the same concerns that we have here, concluded on comparable facts that reversal of a defendant's conviction was required. The defendant in *Benedict* had been charged with both conspiring to steal post office property and with the substantive offense of aiding and abetting the theft of post office property, among other crimes. During deliberations, the jury advised the court that it had reached a verdict as to three of the four charges but was divided on the remaining charge. Over defense objection, the court instructed the jury to render a verdict on the three counts it had resolved; its partial verdict included a guilty finding on the substantive charge of aiding and abetting the theft of post office property but no verdict on the conspiracy charge. Deliberations continued on the conspiracy charge (with the court rejecting a defense request that the

jury be instructed to continue deliberations on the aiding and abetting charge as well) but culminated in a deadlock and a declaration of a mistrial on that count. On appeal, the Eighth Circuit held that it was error for the court to instruct the jury to render a partial verdict while deliberations were ongoing as to the conspiracy charge. "It is improper for a trial court to intrude on the jury's deliberative process in such a way as to cut short its opportunity to fully consider the evidence," the court stated. *Id.* at 19. Neither party had requested a partial verdict, nor had the court given that choice to the jury along with an admonition that any partial verdict would be final as to the counts included in that verdict. *Id.* at 20. Instead, the district court had acted unilaterally in a manner that resulted in a finding of guilt on an aiding and abetting charge that was interconnected with the conspiracy charge on which the jury was still deliberating. *Id.*

> [I]t is particularly troubling that the outstanding charge of conspiracy to commit post office theft was so closely related to the substantive theft offense for which the jury announced a guilty verdict and to which the jury was not permitted to return during the remaining deliberations. It is difficult to imagine that the jury could continue to deliberate on the conspiracy charge without reweighing the evidence with respect to the substantive offense where, as here, the government's evidence on both counts was virtually the same. …

*Id.* The court therefore concluded that the district court had abused its discretion in instructing the jury to return a partial verdict before it had completed its deliberations on a closely

related count; the guilty verdict on the substantive charge of theft therefore could not stand. *Id.*

We need not address whether the problem would have been corrected had the court, as it was initially inclined, asked the jury to continue deliberations on Count Two, with or without a supplemental instruction reminding the jurors that Moore's guilt as to the carjacking charge in Count One was an element of the section 924(c) charge in Count Two. *Cf. United States v. Ruffin*, 129 F.3d 114, 1197 WL 701364, at *3 (2d Cir. Nov. 10, 1997) (unpublished, nonprecedential decision) (noting that district court, in advising deadlocked jury that it had option to render partial verdict, reminded jury that one charge was a necessary predicate of another). The court decided not to pursue that course, and instead accepted the verdict on Count Two as final.

Because the actual rationale underlying the jury's verdicts (and lack thereof ) are typically not the proper subject of judicial inquiry, *see* Fed. R. Evid. 606(b); *Tanner v. United States*, 483 U.S. 107, 116–127, 107 S. Ct. 2739, 2745–51 (1987); *Gacy v. Welborn*, 994 F.2d 305, 313 (7th Cir. 1993), we will not and cannot know why the jury convicted Moore on Count Two without reaching agreement on the predicate offense in Count One. *See Powell*, 469 U.S. at 66, 105 S. Ct. at 477; *Askew*, 403 F.3d at 501. But we cannot discount the possibility that the jury rendered a verdict on Count Two prematurely, without appreciating that its finding of guilt was logically irreconcilable with its continued division on the predicate offense. This is the very possibility that the district court itself recognized when the partial verdict was first returned. Nor can we rule out the

possibility that had the jury been permitted to continue its deliberations on all counts, without interruption and without the court's solicitation of a partial verdict, the jury in weighing the evidence that bore on Count One as well as Count Two might have perceived the inconsistency and realized that it had not, in fact, reached agreement as to all elements of the section 924(c) offense.

For these reasons, we believe that the district court abused its discretion when it instructed the jury to return a partial verdict while deliberations were ongoing and in denying Moore's request for a new trial. Moore is entitled to a new trial on Count Two. Moore has not asked for a new trial on Count Three, and for good reason. His guilt on Count One was not a predicate to his conviction on the felon-in-possession charge set forth in Count Three. Indeed, the elements of the felon-in-possession charge were all but conceded by the defense. *See* R. 163 at 27 (defense closing argument: "Count Three, that's an easy one."). The error in soliciting a partial verdict therefore did not taint the verdict on Count Three.

## III.

Because the district court erred in soliciting a partial verdict from the jury before it had indicated that it was deadlocked as to one or more counts of the indictment, we conclude that the court abused its discretion in denying Moore's subsequent motion for a new trial as to Count Two. We therefore VACATE Moore's conviction on Count Two, AFFIRM his conviction on Count Three, and REMAND for further proceedings consistent with this opinion. Circuit Rule 36 shall not apply on remand.