# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D15-2337

_____

PHILIP MORRIS USA INC.,

    Appellant/Cross-Appellee,

    v.

MARY BROWN, as personal
representative of the Estate of
Rayfield Brown,

    Appellee/Cross-Appellant.

_____

On appeal from the Circuit Court for Duval County.
Harvey L. Jay, III, Judge.

April 18, 2018

PER CURIAM.

    AFFIRMED.

B.L. THOMAS, C.J., and BILBREY, J., concur; WINSOR, J., dissents
with opinion.

_____

***Not final until disposition of any timely and
authorized motion under Fla. R. App. P. 9.330 or
9.331.***

_____

WINSOR, J., dissenting.

The main question in this case is what happens when a deadlocked jury is instructed to reach whatever partial verdict it can—and to do so without any further deliberations. On the unusual facts of this case, I would hold that such an instruction leaves the jury incapable of producing a valid verdict. From the time jury deliberations begin until the time the jury reaches its final decision, jurors must be free to weigh and consider arguments and evidence, to consider other jurors' points of view, to attempt to persuade fellow jurors, to argue and debate—in other words, the jury must be free to deliberate until the very end. Because this jury did not have that opportunity, we should reverse and remand for a new trial.

Mary Brown filed a wrongful-death action against Phillip Morris USA, Inc., alleging that her husband died from smoking-related illnesses. She alleged strict liability, negligence, fraudulent concealment, and conspiracy to commit fraudulent concealment. The litigation lasted years: One trial was continued during jury selection, and another ended in a mistrial after this court granted a writ of prohibition, *see Philip Morris USA Inc. v. Brown*, 96 So. 3d 468 (Fla. 1st DCA 2012). A third trial ended with a deadlocked jury.

In the next trial—the trial at issue here—the jury's verdict form asked (among other things) whether Philip Morris's actions legally caused the husband's death, the amount of any compensatory damages, the relative percentages of fault, and whether punitive damages were warranted. After deliberating for approximately four or five hours, the jury sent out a note saying it was "stuck on the percentage" and asking "[w]hat are our options?"

After conferring with counsel, the court told the jury to follow instructions already given. The jury continued deliberating for some two additional hours before sending out another note. This one explained that jurors "have not been able to agree on question #4 [regarding comparative fault] and therefore we cannot go any further." After more discussion with counsel, the court delivered a

standard *Allen*[1] charge, asking the jury to continue its deliberations. But after roughly an hour more, the jury sent out another note: "Now hung on question #2 [regarding fraudulent concealment]. Some have change[d] their mind. It started out on question #4. Some say yes, and some no. Now need white out for question #2. Yesterday it was yes now today it hung [sic]."

Lawyers for both sides offered their views on how the court should proceed. Both sides agreed the court could not give a second *Allen* charge.[2] Philip Morris argued the court should grant a mistrial since the jury could not reach consensus after its *Allen* charge. Mrs. Brown, though, argued that the court should accept a partial verdict on the issues the jury did decide. Ultimately, the court brought the jury back and told them to return to the jury

---

[1] An *Allen* charge is a supplemental instruction courts frequently give when a jury struggles to reach a verdict. *Gahley v. State*, 567 So. 2d 456, 459 (Fla. 1st DCA 1990) (citing *Allen v. United States*, 164 U.S. 492 (1896)).

[2] In *Tomlinson v. State*, 584 So. 2d 43 (Fla. 4th DCA 1991), the Fourth District followed *United States v. Seawell*, 550 F.2d 1159 (9th Cir. 1977), and adopted a per se rule that giving a second *Allen* charge is fundamental error. No other district in this state has adopted this rule, *Nottage v. State*, 15 So. 3d 46, 49 (Fla. 3d DCA 2009), and many federal courts have explicitly rejected it, *see, e.g., United States v. Davis*, 779 F.3d 1305, 1313 (11th Cir. 2015) ("We have never adopted a *per se* rule against successive *Allen* charges. Other circuits have held there is *not* a *per se* rule." (collecting cases)). Florida's standard jury instructions do include a comment that the deadlock instruction "should be given only once," but that comment is based solely on *Tomlinson*, Fla. Std. Jury Instr. (Civ.) 801.3, and standard jury instructions are not binding precedent, *BellSouth Telecomms., Inc. v. Meeks*, 863 So. 2d 287, 292 (Fla. 2003); *see also In re Std. Jury Instrs. in Civil Cases—Report No. 09-01 (Reorganization of the Civil Jury Instrs.)*, 35 So. 3d 666, 671 (Fla. 2010) (cautioning "that any comments associated with the instructions reflect only the opinion of the Committee and are not necessarily indicative of the views of this Court as to their correctness or applicability").

room, to white out verdict-form responses on which the jury was no longer unanimous, and to fill in answers where there was unanimity. The court specifically told the jurors to not deliberate any further in doing so.

After about six minutes in the jury room, the jury returned with a partial verdict, answering two of the verdict form's six questions. The jury agreed that the husband was a member of the *Engle* class, *see Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006), and that Philip Morris's conspiracy to conceal was a legal cause of the husband's death. Because the jury found liability on one intentional-tort theory, its inability to provide verdicts on other theories or on comparative-fault percentages was not critical, *see* § 768.81(4), Fla. Stat. (2013); *see also Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 304 (Fla. 2017) ("[T]he comparative fault statute does not apply to *Engle* progeny cases in which the jury finds for the plaintiff on the intentional tort claims."). But there remained the unanswered questions of the amount of compensatory damages and whether punitive damages were warranted.

Over Philip Morris's objection (and motion for mistrial), the court accepted the partial verdict and scheduled another trial to resolve the remaining issues. At the end of that trial, the jury awarded compensatory damages but found Philip Morris not liable for punitive damages. Philip Morris appealed, contending that the trial court was wrong to accept the partial verdict.

On appeal, Philip Morris's opening position is that Florida does not recognize partial civil verdicts, that courts must declare mistrials whenever juries cannot agree on all issues. Philip Morris argues that no Florida appellate court has ever sanctioned a partial verdict like this one. But neither has Philip Morris cited a Florida appellate decision explicitly precluding the practice. Partial verdicts are routinely used in Florida criminal cases, *see, e.g.*, *State v. Muhammad*, 148 So. 3d 159, 159-60 (Fla. 1st DCA 2014); *Avilla v. State*, 86 So. 3d 511, 513 (Fla. 2d DCA 2012), and they have been accepted in civil cases in federal courts, *see, e.g.*, *Kerman v. City of New York*, 261 F.3d 229, 242 n.9 (2d Cir. 2001) ("Kerman also argues that [the] decision to accept a partial verdict was error because there is no authority for this procedure. We

4

disagree. In the absence of authority prohibiting such a partial verdict in a civil case, and Kerman cites none, we believe that at the very least a trial judge, in the exercise of sound discretion, may follow such a course."); *see also Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 190 (4th Cir. 1994); *Bridges v. Chemrex Specialty Coatings, Inc.*, 704 F.2d 175, 180 (5th Cir. 1983).

Regardless of whether partial verdicts are categorically prohibited, I would hold that the specific circumstances of this case warrant a new trial. With any partial verdict, there is a "risk that the jury will 'premature[ly] conver[t] . . . a tentative jury vote into an irrevocable one," *United States v. Moore*, 763 F.3d 900, 911 (7th Cir. 2014); *accord United States v. Wheeler*, 802 F.2d 778, 781 (5th Cir. 1986), and when a jury had been unanimous on certain points and is later told to return to the jury room to answer whatever questions they can—without further deliberating—some jurors will feel compelled to vote consistent with their earlier position.

"It has long been the law that a trial court should not couch an instruction to a jury or otherwise act in any way that would appear to coerce any juror to reach a hasty decision or to abandon a conscientious belief in order to achieve a unanimous position." *Thomas v. State*, 748 So. 2d 970, 976 (Fla. 1999). In deciding whether a court's instructions have violated this principle, we examine de novo the totality of the circumstances to see if the instructions "create a serious risk of coercion." *Id.* at 978. Considering the totality of the unique circumstances here, a new trial is warranted.

While attorneys argued about how to handle the jury's last note, the jury, having already changed its collective mind on some issues, remained together in the jury room. And there is no reason to suppose the jurors' fluid deliberations stopped while the attorneys argued. *Cf. United States v. Byrski*, 854 F.2d 955, 962 (7th Cir. 1988) (noting that "the state of jury deliberations is ever-changing"). When later told to end their deliberations (essentially to memorialize where they left off earlier), reasonable jurors might not have understood their options. They might not have understood that they were not locked into the positions they held immediately before sending their last note—that their vote could

accommodate any new view intervening discussions produced. They might not have understood that their remaining duty was more than a ministerial duty to record their earlier positions. *Cf. Harrison v. Gillespie*, 640 F.3d 888, 899 (9th Cir. 2011) (explaining that jurors' preliminary votes can play important roles in the deliberative process but that these informal polls "do not constitute a final verdict"); *cf. also Brutton v. State*, 632 So. 2d 1080, 1083 (Fla. 4th DCA 1994) ("The court's questioning created an impression that the juror did not have an absolute right to recede from her vote in the jury room during the polling process.").

When the jurors' last note told the court they were "hung" on some issues, no juror was then obligated to maintain his or her tentative vote on any issue. *See United States v. Straach*, 987 F.2d 232, 243 (5th Cir. 1993) ("[A] jury has not reached a valid verdict until deliberations are over . . . ." (quoting *United States v. Taylor*, 507 F.2d 166, 168 (5th Cir. 1975))). Yet any juror wanting to explain (or even identify) his or her changed view would feel restricted by the court's specific instruction to cease deliberations. To the point of the final instruction, juror deliberations had been fluid—the jury found (and then lost) agreement on some issues— but by precluding further deliberations, the court precluded further opportunities for additional changed minds. *Cf. Straach*, 987 F.2d at 243 (noting that "continuing deliberations may shake views expressed on counts previously considered" (quoting *Taylor*, 507 F.2d at 168)).

It is no answer to say that the jury was polled, with each juror announcing that the verdict was his or her own. The question is not whether all jurors did, in fact, vote for the ultimate verdict; the question is whether all jurors did so knowing they could change their minds—or try to change others' minds. The subsequent poll offers therefore no cure. *See Moore*, 763 F.3d at 910 (determining that trial court's error in instructing jury to return a partial verdict while deliberations were ongoing was not cured by polling of the jury).

For these reasons, I would reverse and remand for a new trial. This would make it unnecessary to address Philip Morris's independent argument that alleged juror misconduct requires a new trial. As to Mrs. Brown's conditional cross appeal, I would

reject Philip Morris's *Tipsy Coachman* arguments, and I would hold that Mrs. Brown may seek punitive damages on her negligence and strict-liability claims in a new trial. *See Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1221 (Fla. 2016). But Mrs. Brown asserted she would abandon her cross appeal if she prevailed in the main appeal, which—despite my view—she now has.

_____

Amir C. Tayrani of Gibson, Dunn & Crutcher LLP, Washington, DC; Geoffrey J. Michael of Arnold & Porter LLP, Washington, DC; Hassia Diolombi and Kenneth J. Reilly of Shook, Hardy & Bacon LLP, Miami; and W. Edwards Muñiz of Shook, Hardy & Bacon LLP, Tampa, for Appellant/Cross-Appellee.

John S. Mills and Courtney Brewer of The Mills Firm, PA, Tallahassee; and John S. Kalil of Law Offices of John S. Kalil, P.A., Jacksonville, for Appellee/Cross-Appellant.